The opinion of the court was delivered by

Duncan, J.

This was an action of assumpsit, brought by the defendant in error against the plaintiff in error. There are two counts in the declaration, and a general verdict in favour of the plaintiff. The first states, that whereas, heretofore, on the 1st January, 1818, in consideration that'the said Frederickan^. Margaret his wife had, before that time, sold and conveyed to the said Tobias in fee simple, a certain lot of ground in the borough of Lebanon, he the said To-bias, then and there undertook and faithfully promised, -to pay the said Frederick, whatever sum of money the said Tobias should sell the said lot of ground for, over and above the sum of £ 1800: and the said Frederick avers, that afterwards, to wit, on the day and year aforesaid, the said Tobias sold the said lot of ground, with the appurtenances, at and for the sum of £ 6000. Yet the said Tobias though afterwards requested, hath not paid the said sum of £ 4200, nor any other sum in satisfaction of the same, but the same to pay hath refused,, to the damage of the said Frederick and his creditors.
The second count is, indebitatus assumpsit for £ *4200 of plaintiff, received by the defendant to and for the use of the.plaintiff, to his damage and the damage of his creditors, &c.
The state of the case, so far as depends on documentary evidence, is this: x ,
John Casper Stoever, being seized in fee of the lot, on the 12th May, 1779, devised as follows: I give and bequeath to my youngest son Frederick, the corner lot, with the houses upon it, in Lebanon, with the benefit of two eighth parts of the ground rents belonging to Lebanon, as his own1 property, the organ, a horse, sad-lle, his bedding, tables, chairs, silver spoons, gilded ciip, desk, ooking glass, bedstead, all the money now in possession, both congress and hard money, of which numbered particulars he shall not oe master, till he hashisfullage, which will be in September, 1780.” Appendix to the will. “ Further, I will and order, that in case my" son Frederick should die, before he has his lavvful age, or should *444 die after he comes to his lawful age, without issue, then all and singular the above legacies, or what shall be left thereof, shall be sold, and then it shall be equally divided among the .rest of my children or their representatives.” Frederick being indebted to his brother Tobias, in the sum of £ 1800, on the 23d February, 1801, with his wife, conveys the lot of ground in absolute fee simple to him; and on the same day Tobias executes an agreement tantamount to a deed of defeazance." On the 14th December, 1802, the deed from Frederick and wife to Tobias, was acknowledged by them, and recorded 14th May, 1803. , Frederick continued in possession, and an ejectment was brought by Tobias against Frederick, to December, 1805, and on the \6\h' April, there was judgment on térms in writing filed of record, signed by the counsel of the parties, that a judgment be entered, and that no writ of possession issue until the 1st of April'next-, and in case the amount of the-debt due to plaintiff be repaid with interest and costs of suit, on .or before the said day, the property to remain in the defendant; but if the debt interest arid costs of suit are not then paid, a writ of habere facias pos-sessionem, to issue immediately, andtbe rfents of the present year to be paid to the plaintiff, dn case of non-payment. This money not having been paid, a habere facias possessionem, issued to July, 1808, and possession was delivered.
On the 31st January, 1809, Frederick Stoever petitioned for the benefit of the insolvent laws. There is a list of his property, and of his creditors. This lot of ground is not included, nor any notice in relation to it, of any claim by the petitioner.
On the 6th March, 1809, Frederick Stoever was discharged, after rr aking the usual assignment of his effects for the benefit of his creditors. His assignees were, Michael Sleckbeck,Leonard Im-mel, and Anthony Kelker.
On the 30th October,. 1813, the lot, &c. was sold at public sale by Tobias Stoever to Peter Lineweaver, possession delivered, consideration money £ 5050. On the same day, notice was given by Tobias Stoever in the Morning Star, a German newspaper published at Lebanon: “ Take Notice — who may be inclined to purchase the two large houses for sale this day, will do well to search the office at Lebanon, and examine the titles, that they may not be belied and cheated.” This notieé could relate only to this property, and must have referred to his father’s will, and certainly was intended to hold out that the purchaser would be defrauded, and that. Tobias had no title. To May,, 1818, Frederick Stoever had brought an action of debt on book account against Tobias: ar- • bitrators found in favour of defendant, £ 16 5s. 5id., and judgment was entered on the report December, 1809. On the 1st April, 1S14, deed with covenant of warranty was executed to the purchaser, Li-neweaver, and on the 7th April, 1814, a bond of indemnity from Tobias to Lineweaver, in 20,000 dollars, for securing the title against all persons..
*445 Anthony Kelker, one of the assignees, died, and Michael Slech-beck and Leonard Immel, on the 27th December, 1817, with four other creditors joined in an instrument of writing to Frederick, which after reciting his discharge under the insolvent act, proceeds, “ and whereas the said assignees have hitherto neglected to take'upon themselves the trust aforesaid, we, the said creditors, in order-to have the affairs of the said Frederick brought to a-final "settlement, do hereby release all and singular the real, personal and mixed estate of which the said Frederick was in any manner or way entitled, which passed to his said creditors under the said ' assignment; and we do hereby empower the said Frederick Stoever to sue for and recover the same, in his own name or otherwise, as fully and freely as he might have done in case the aforesaid assignment had not been made, or as if he had never taken the benefit of the insolvent laws, nevertheless in trust, and for our use; and the residue of the said property, tKe principal of the said debts being paid, to use without interest, to appropriate to his own use. And further to do such things that the said Frederick Stoever may deem best calculated to promote the interest of all parties to this agreement.
This case will be best understood by separating the written evidence,- all of which was clearly competent, from the parol evidence which has been excepted to, thus considering the operation of such parts of the parol evidence as may be considered legal, on the general merits, and on the answers of the court, to the many questions proposed by the counsel on each side, in their charge to the jury.
And the first question, which has engaged our attention is, what estate did Frederick take in this property, under his father’s will: for if he only took a fee tail, or if it is even doubtful, it would be unjust to expose Tobias, first to a payment to Frederick, as if he held in fee simple, (unless he" suffered a common recovery, or executed a conveyance in the form prescribed by law for barring es-tatés tail, to the purchaser,) and then to damages on .his covenant of warranty, or bond of indemnity.
On this point, the court have found no difficulty, and it is well for the plaintiff in error they have not. It would be to him a very dissatrouS victory; for in that event he would lose all.
In forming a conclusion, as to the true intention of the testator, the mind is free from the control of all technical limitátions, or the meaning of legal phrases. Did the interpretation rest on the first part of the will, there could be . no doubt but that a fee simple in the lot is devised .to Frederick. He gives him the corner lot, with the house upon It, as his own property. The dev.ise is of real property; and where it is so applied, property is a word large enough to carry the interest in the estate. It is stronger .than “all my real and personal effects,” which have been construed a fee. Cowp. 290. There- Lord Manseieed said, the word “ effects,” is synonimous with substance, and property generally *446 is every property a man has, to be enjoyed as his own¡ The very question was decided in Morrison and others v. Semple, 6 Binn. 94, that a devise of all my real and personal property passes a fee. It is very doubtful, whether the appendix related to'the lot, or was confined to the legacy of personal effects; and if it was doubtful, then, as.it does not exvi termini include land, it ought not to beso construed. ' The word legacy, where by direct reference, or manifest implication, it is applied to real estate, will pass it. Rossiter v. Simmons, 6 Serg. & Rawle. It is to be observed, that in the devising clause, the lot is immediately to be his own property: but the personal property he is not to be master of until 21. He had declared, that his son immediately should have the lot as his own; but the other legacies he was not to be master of until 21. He might well intend to provide for the event of his dying under 21, without issue, and cúr-rente calamo add, or if he should dieafter he comes to his lawful age, the above legacies, or what shall be left of them, shall be sold, which naturally refers to personal property, the furniture, which might be worn out or broken, or the money which might be spent. It is at best but mere conjecture, involved in obscurity, which should not change an express devising clause, nor limit an absolute estate given in the first part of the will. But if ifdid mean real estate, the lot, then, what is the devise over? Such part only as should be left; thus admitting a right of disposition. Such part of the personal estate as should not be consumed by him, and such part of the realty as had not been disposed of by him in his life time, on his death without issue, is limited over. It is not fit to cast a shade on this title, by deciding, that it is doubtful, and that in order to entitle the plaintiff to recover, he should bar the entail. It is not doubtful, and this is no impediment to the plaintiff’s right of recovery. Frederick Stoever had the right or,power to dispose of it in fee simple.
On the writings, the conveyance"with the defeasance, was this a mortgage? Where the question, whether mortgage or not, depends solely on the writings, it is purely a matter of law, and ought not to be left to a jury: otherwise, if it depends partly on parol evidence. Wharfe v. Howell, 5 Binney, 499. The question is.sometimes complex and intricate, and it is difficult to draw a line of discrimination,-which shall be, at the same time, precise and equitable, between mortgages and conditional sales. But hero there are such strong features, that it is impossible to mistake the parentage of these instruments, the family stock from which they spring. The defeasance, I consider as incorporated into the deed. In its first concoction, was this a conditional sale, really intended to be actual, on the non-payment o’f the money, on the day prescribed, or was it a security for the payment of the money. It is impossible to deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by the payment of money, at a future day. Such con *447 tracts are not prohibited by the policy of the law, but the policy of the law does prohibit the conversion of a real mortgage into a sale. And as lenders of money are less under the pressure of circumstan-stances, which control the perfect and free exercise of the judgment, than the borrowers, the effort is frequently made by persons of this description, to avail themselves of the advantage of this superiority, in order to obtain inequitable advantage. Taking up all the cases on this subject, it will be found, that the leaning of the court has been always against them, and doubtful cases have been decided generally as mortgages. Conway’s Executors v. Alexander, 7 Cranch, 218. The form of this defeasance is pretty conclusive evidence, that it was intended as a security for the payment of money loaned by Tobias to Frederick. It recites, that Frederickaow oweth to 1'obias the sum of £ 1800, for which sum of money, or' securing the payment thereof, the said Frederick did, by conveyance bearing the same date, convey the lot of ground to Tobias. Thus in the very outset, we have the explicit declaration, that the conveyance was executed for securing the payment of £ 1S00.
An estate cannot be a mortgage at one time, and an absolute purchase at another. The very fact, that the sale was conditional implies an expectation to redeem. But the concurrent agreement gives a power of redemption, limited, in point of time, as clauses of redemption are. A conveyance may be considered as a mortgage, though the defeasance be on a separate paper. Dimond’s Lessee v Enoch, Addis. 357. There is sometimes a difficulty in disquisitions of this sort, in drawing a line between mortgages and conditional sales. The great desideratum, which Courts of Chancery make the ground of their decision, is, whether the purpose of .the parties was, to treat of a purchase, the value of the property contemplated, and the price fixed, or whether the object was a loan, and the security of the pledge for re-payment intended. Robertson v. Campbell, 2 Call, 428. Wheeland’s.Lessee v. Swartz, 1 Yeates, 579.
The answer of the court to the plaintiff’s second point, and fifth point, is erroneous. It was not the purpose of the instrument to vest the fee simple absolutely in Tobias, for the purpose of a sale, and for the proceeds after payment of his own debt, to render him responsible as a trustee for Frederick; and if there was any covenant to that effect, then this action could not be supported. Besides, this is totally inconsistent with the answer to the first question, which expressly recognizes that the contract was a mortgage. The answer to the first point decides both the question of law and fact. If depended on the writings only, then the parol evidence was inadmissible. But, as it was admitted, and depended partly on the parol testimony, whether it was a mortgage or- conditional sale, it ought to be left to the jury. Wharfe v. Howell, 5 Binn. 499.
This was expressly decided in Wharfe v. Howell, 5 Binn. 499, where A., in consideration of $ 200, executed and delivered to B. *448 an absolute deed in fee simple, of land worth $ 800; and, at the same time? B. executed- and delivered to A. a deed of defeasance, conditioned, that if A. should, within three months, -pay to B. the sum of $ 200 without any deduction, the first deed should be void, and B. should reconvey: and, at the time of executing the deeds, the scrivener stated to the parties, that the writing would operate as a mortgage: it was held, that though there was no covenant for the repayment of the money lent and interest, the writings constituted a mortgage, .upon which the lender might recover the money, due by scire facias and salo, and the borrower recover the premises in ejectment, and, if the rents and profits received by the lender up to the time of trial were equal to the money lent and interest, without bringing the money into court. Thus, the want of a covenant to repay makes no difference,. as has been decided in many cases; particularly 2 Atk. 296. 1 Wash. 14. Ross v. Norvall. This ease is stronger than Wharfe v. Howell. 'There the serive-vener was suffered tosyvear,' that the defeasance was intended as a mortgage; here the very agreement states the conveyance to be a security for the payment of money. It is in terms, redeemable within three years. ■ Now the time of redemption is, in equity, in general unimportant; for the redemption cannot be clogged. Chancery would decree a reconveyance after the stipulated time, and the parties cannot by their own agreement preclude the chancellor from granting relief; for their agreement cannot alter what the court says are the special terms of that contract. But this, applied to the case of a purchaser, is quite a different consideration. If from a view of the circumstances in the first instance, the transaction appear to have been intended ás a' mortgage, such circumstances would vitiate the sale,,, and turn .the absolute conveyance into a mortgage, and the provision will be rejected, as repugnant, on the rule in equity that the right of redemption cannot be restrained or limited. I am, therefore, of opinion, that these two instruments constituted a mortgage, and not a conditional sale — a security for a debt, and not a purchase of. the property.
But the difficulty in my mind has proceeded from the ejectment, and the agreement filed of record, accompanied by possession, acquiescence, valuable improvements, and the debt being at that time the full value of the property. This is a very serious inquiry, giving to the verdict in ejectment only the-weight of a foreclosure in chancery. It is not conceded that the mortgagee may redeem at any time, within twenty years after foreclosure. But this presents a different question, in a case where the instrument is not strictly a mortgage at law, and where at law the time is'material, a different case from a forced judgment without any terms stipulated, or advantage conferred on the defendant by the agreement; and where there is a benefit conferred, and where no advantage being taken of the necessity of the defendant in the ejectment; a full and fair price is allowed for his property; as much, or perhaps *449 more than it. would bring on a forced sale by levari, and tbe defendant in the action goes into possession of it as his own, continues in possession and improves it as his own under the eye of the former owner, • that owner an insolvent debtor, not returning this as his property to his assignees after the. lapse of years; when, if the property had been consumed by fire, all would have been his loss, merely because the property by fortuitous circumstances, has risen in value, and the bargain turns out a good one, he should, having made a sale, be converted into a trustee, a bailiff, and receiver of the rents, and as such to render an account, is a pretence of equity that I cannot feel, which touches not my conscience as a chancellor, and my sense of justice revolts from such a principle: and if a Court of Chancery would not interpose ’ in the plenitude of their equitable jurisdiction, I would not assume such jurisdiction, nor ought it to be confided to any jury. If the estate had remained in the hands of Tobias Stoever, would .the chancellor have directed a reconveyance on payment of the debt, after deducting the rents and profits? If he .would, then the plaintiff, or his assignees are entitled to recover the surplus beyond payment of the debt, interest, and all expenses. In Bloodgood v. Zeily, 2 N. Y. C. E. 125, it was decided, that if a mortgage be forfeited, and execution sued on a judgment recovered on tbe bond, and a conveyance to secure a portion, of the mortgage money be made of other property, redeemable on paying a certain sum, at a future day, such convéyance will partake of the original transaction, and be deemed a mortgage, and not a defeasible purchase; and, therefore, if after lapse of the day of payment, these lands be sold to a bona fide purchaser, though the purchase will not be impeached, the grantee will be compelled to account; and the sum at which the land sold, with interest, he will be responsible for,' though the grantor did not demand a redemption for more than five years after the day of repayment. Where the mortgagee proceeds by ejectment, provision is made by statute of 7 G. 2, “ that in all actions at law, relating to mortgages, .on monies secured by bond and mortgage, or in eject-ments, if there is no suit in equity to foreclose, the tender of principal and interest and costs, by persons having a right to redeem, pending such action, and (upon refusal to accept,) bringing the money into court shall be deemed a satisfaction, and the court may compel the mortgagee at mortgagee’s costs, to assign, &e.” This judgment in ejectment I consider as a foreclosure, on terms agreed. Now equity will not enlarge the time for the mortgagor to redeem, after six years’ acquiescence under a foreclosure, by his own agreement; especially if there be any improvement on the estate. Lant v. Crisp, 15 Vin. 469.
So there shall be no redemption after long possession,_ settlement made, and estate improved. A note was given at the time of the release of an equity of redemption, that the releasor should have land reconveyed to him upon payment of what was given for the *450 land, within a year; such payment having been neglected for several years, it was held, there should be no redemption.
It is a strong ingredient in this case, that the mortgage money was nearly equal to the value of the estate. There is no general rule in chancery as to the exercise of jurisdiction in opening foreclosures, either with respect to the time which will be considered a bar, or to the particular circumstances which will entitle a suitor to the interposition of the court. For cases of this sort embrace such a Variety of considerations, and are frequently so complicated in their nature, that each depends in a great degree upon its own combined circumstances; and may rather be considered as an instance of the fact, that the court will interfere to open a foreclosure, than as a general rule. Pow. on Mort. 499. Lant v. Crisp, 2 Eq. Ab. 599. 2 Br. P. C. 111, is a case entirely apposite to this, where the mortgagee, in 1781, entered into possession upon a foreclosure made absolute by consent, and considering himself as having an absolute estate in the mortgaged premises, by virtue of the decree, proceeded to make improvements therein, by pulling down buildings that were ruinous. The mortgagor, six years after, iii 1787, moved the court for further time to redeem, and it was so ordered, on terms: but this, and several other orders grafted thereon, were reversed on appeal to the House of Lords; upon the ground, that it was not consistent with the practice of Courts of Equity, or warranted by precedent, to enlarge the time for 'redemption, after the mortgagor’s acquiescence for six years, under a foreclosure by his own consent; especially after an alteration had been made in the estate, either by pulling down the buildings, enlarging them, or otherwise; that the appellant had been two years in possession before he began alterations on the estate, having such a title as would satisfy a purchaser. But Hollingsworth v. Fry, 4 Dall. 345, is still stronger. There, in an action of. partition, brought by Hol-lingsworth against Fry, after jury sworn, a juror was withdrawn, and an agreement entered into, that judgment should be entered on that day in Bank, unless the plaintiff, or Robert Ralston his assignee, should give security to pay one moiety of all the monies expended by the defendant in improvement of the land in question; and, if such security should be given, then the question of what money the defendant was entitled to, should be ascertained by three referees mentioned in the agreement, and the money being fully discharged and paid within the period of six months, .judgment in partition to be entered for the plaintiff: but if not paid, then the defendant to hold the mills, &c. free and discharged from the claims of the plaintiff1, and all persons claiming under him, and judgment to be entered for him in the action. The plaintiff gave the security required; the referees reported a sum due to the defendant: a number of exceptions were filed to this report, &e. 2d July, 1791. Judgment was given- on it in the Supreme Court. On the 26th September, 1796; Hollingsworth sent his son to tender to the defendant the *451 amount of the report, which he refused to accept, and filed his bill on the equity side of the Circuit Court of the United States for Pennsylvania district, alleging fraud in the defendant in making up the accounts, for a discovery and account, perpetual injunction on the judgment, partition and general relief. This bill was dismissed; and Paterson, Justice, observed, that “ the great rule of interpretation, both with respect to deeds and contracts, is, to put such a construction on them as will effectuate the intention of the parties, if such intention be consistent with the principles, of law. In the present case, there is no difficulty in coming at the intention, as it is clearly and forcibly expressed in the agreement, and is capable of receiving one construction only. The time of payment is made a substantial, and not a mere formal circumstance. It enters into the essence of the contract, and, therefore, must be observed. The court cannot decree against the legal and express stipulation of the parties themselves. The situation of the parties, the nature of the property, and the speculative spirit of the project, were powerful inducements for drawing up the agreement in- the plainest and strongest terms, so as to leave no doubt of the intention, and to render the time of performance a cardinal point. Again; if the agreement would admit of another construction, the complainant comes too late to avail himself of it. The door of equity cannot remain open for ever. The complainant did not make a tender of the money, till the lapse of five years after the termination of the time limited by the contract. So far was he from using legal diligence, that he has been guilty of gross delay. In cases of the present kind, equity will not suffer a party to lie by, till the event of the experiment shall enable him to make his election with certainty of profit one way, and without loss any way. This mode of procedure was unfair, contrary to natural justice, and in exclusion of mutuality.”
In the present case, the agreement was as strong as the law could make it. It was an agreement made, drawn up, and signed by the counsel. If there had been any undue advantage taken of the defendant’s necessities; if the mortgage money was greatly inadequate to the fair value of the property; if it would, on a sale on a levari facias have brought a much greater sum, the remedy of the defendant oh the return of the habere facias possessionem would have been to have laid the equity of his case before the judges of that court, who, if they thought proper, might have interposed. But he suffered himself to be put out of possession, and did not avail himself of an appeal to the discretion of that court, but acquiesced for years. This circumstance was considered of importance in Hollingsworth and Fry.
If the grantee of land subject to power of redemption, have not all the remedies of mortgagee, the conveyance will not be const-dered as pignoratitious, but us a conditional sale: the first being subject to redemption, the second not, By the subsequent agree *452 ment if the property sunk in valúe, Tobias would have, no remedy for the difference. He takes the risk on himself. It assumes a different character. The liabilities with regard to each other changed. By the first agreement, Tobias did not take all the risk himself. By the second he did.. It would be against all equity that Tobias should De exposed to all the loss, while Frederich would enjoy all the good.
I am, therefore of opinion, that this agreement of record, with the subsequent act of record by Frederick, in his return of property when he obtained the benefit of the insolvent law, and the acquiescence in the sale by him and his assignees, the possession and alteration of the property by Tobias, and the improvements made would be binding on Frederick, and on his assignees. It is observed, that the assignment was not a clandestine one between the brothers, but an open one in a court of record, in an adverse suit, of which the assignees must be presumed conusant; and I think it would be against all conscience that Frederick or his creditors should, after the acquiescence, where any injury, destruction or deterioration of the property would be at the risk of Tobias, reap the benefit of a l'ise in the property, while they remained unaffected by any fall; and as there was no mutuality, so there is no equity. The opinion of the court on many of the questions, particularly as to the effect of the defeasance, constituting the transaction a mortgage, and not a conditional sale, was correct. But the answer to the fourth question of the plaintiff below, which went to the root of the plaintiff’s claim, was radically erroneous. For we must suppose the question put to the court, to have relation to the judgment confessed in this ejectment, and to the agreement of the parties in such case; under such circumstances it never can be, that the mortgagor has 20 years to redeem.
We, however, are to consider whether the parol proof was admissible, and if admissible, what effect it ought to have. In one point of view, it was clearly admissible, as-evidence to show a prolongation of the time of redemption, and to lessen the effect of the acquiescence. . The evidence was, at least in that point of view, relevant. Nor has the plaintiff in error succeeded in showing, that any of the witnesses were incompetent. This evidence should go to the jury, as showing an understanding between- the brothers, that advantage was not to be taken of the lapse of time. It might have caused Frederick and his assignees to delay a tender of the money, and so far would be fraudulent. This evidence was weakened by the act of Frederick in not returning the property, or noticing it any way in his schedule. This would be powerful evidence to show, that the agreement was final. For no man would pretend to say, that Frederick Stoever could be indicted for perjury, in not returning it; and the notice of Frederick Stoever to purchasers, connected with the agreement, and wilh his omission to return it, though not operating as a bar to creditors, yet is persuasive, evidence to show a *453 dereliction and abandonment, and to disprove the existence of any-subsisting agreement to redeem, and that the lapse of time was considered as peremptory: which it certainly is on every foreclosure by consent and time given, unless when thé estate is of so much greater value than the incumbrance, as to show an advantage taken of the mortgagor’s necessities; so gross an inadequacy would call for the interposition of chancery, on that ground alone. I am inclined to think that these subsequent declarations would not amount to a contract, or give a new cause of action, as they would, unconnected with the former transaction, be merely gratuitous, and would not form any consideration, either legal, equitable, or moral, on which to ground an assumpsit, but- that the whole matter is open to inquiry, and that it would be a fact for the jury-to decide, whether there was evidence to satisfy their minds, that the time of redemption was prolonged by mutual agreement, and that the defendant in error and his creditor’s acquiescence was occasioned by these declarations. For if Tobias acted upon it as a redeemable interest, and ' Frederick and his creditors did not abandon the right,' but were lulled into security by the declarations of Frederick, I think equity would still so decree. Some of the acts of Tobias are quite inconsistent with this, his repairs, improvements, additional buildings, and certainly the conduct of Frederick and his assignees aré inconsistent with this. Their par.ol declarations, if the agreement was fair, would not, after this lapse of time, improvements made, where the incumbrance was nearly equal to the value of the property, merely because from adventitious circumstances, the property rose in value, be a ground of relief in chancery. Nor ought they in this action, which is in the nature of a bill in equity; unless the lapse of time was occasioned by these declarations.
Bill to redeem after decree of foreclosure Id years before, suggesting fraud and surprise in obtaining the decree, and a parol declaration both before and after the decree, that the mortgagee was willing to take his principal, interest and costs, and quit the estate; •defendant pleaded the decree, and denied the fraud. Depositions of several witnesses were read to prove such a parol declaration by the mortgagee. Bill dismissed with costs, the chancellor declaring it would be dangerous to open decrees on such parol declarations. 7 Vin. 398. The clause respecting a sale which might be occasioned in three years and three months, by the death of either Tobias or Frederick, and where provision is made, that the surplus should be paid to Frederick, and the deficiency made up to Tobias, does not relate to any subsequent sale, and has no bearing on the question further, than to show, that it was considered as a security, and nothing more. For if the lot sold for more than the & 1800, and interest, Frederick was to have it; if less, Tobias was to be paid the amount of his debt by Frederick. Thus stamping the instrument with the seals of a mortgage, and not with the impressions of a conditional sale. It is of some importance to inquire, whether, *454 under these two instruments, Tobias could have brought a scire facias under the act.of assembly. This is the criterion between mortgages and conditional sales, a redeemable quality in the grant, and right to exact the whole money, if the property was of less value than the money advanced.
This court are of opinion, that the agreement rendered the estate defeasible, and both instruments, the conveyance, and defeasance, constitute a mortgage. The objection is a technical one, that it is not expressed that the conveyance should be void on payment of the money secured in three years, but that on such payment the grantee shall reconvey. The defeasance expressly recites the conveyance to be a security for money due. It is, therefore, manifest, that the land conveyed was intended as a pledge only; and notwithstanding the manner of the grantor receiving back the pledge on his .payment of the money, is by a re-conveyance, yet the nature of the conveyance remains the same. It is not absolute, but conditional, and must be considered as a mortgage, which the parties could by no terms render irredeemable. See Erskine v. Townsend, 2 Mass. 497. But they consider the agreement, the ejectment, the possession taken immediately, the improvements made by Tobias, the acquiescence of Frederick and his creditors, present such a case, as that a Court of Chancery would not interpose; and that the plaintiff has no cause of action, unless the jury were satisfied, from the whole evidence, that there was a distinct agreement by Tobias, to enlarge the time of redemption, and that in consequence of this agreement they rested' in security — in one word, that Tobias, Fre ■ derick, and the assignees of Frederick, acted upon this, always, as a redeemable interest; that Frederick and his assignees were lulled into security by Tobias’s agreement, a distinct agreement subsequent to his obtaining the possession, and not mere loose conversations of the gratuitous intentions of Tobias.
The action is properly brought in assumpsit. In no other form could it be supported. If there was a Court of Chancery, inde-bitatus assumpsit for money had.and received, would lie in such a case as this. That action is in the.nature of a bill in equity, in which the plaintiff can recover every thing which in equity and good conscience the defendant ought to refund. But where there is no Court of Chancery, and where there is no covenant or agree-' ment under seal to pay the surplus after discharging the mortgage, it is the only appropriate action.
But there are two counts; the'first certainly is unnecessary, and whatever is unnecessary is always exposed to danger. The consideration on the special contract, was altogether past. It was in consideration that plaintiff had before that time sold and conveyed to defendant, he then assumed upon himself, &c. But this might be cured by verdict. For the rule of law is, that a past consideration is not sufficient to support a subsequent promise, unless there was a request of the party express or implied, at the time of performing the consid- *455 ©ration. Where there was an express request, it would be at all .times sufficient to support a subsequent promise. Where there is a verdict, a request would, be implied. Osborne v. Rogers, 1 Wms. Saund in Notes, 264. But this special count is at variance with the proofs in the cause, and with the whole controversy between the parties. It is not because the plaintiff sold and conveyed his land to the defendant, that he claims this money; but because he did not sell but mortgaged.
But there is one objection to this action, that has not been answered* and it is because it could not be answered; for all that was debateable has been well argued. That is, that the action could not be supported by Frederick Stoever. By the assignment, under the insolvent debtor’s act, the property passed instantly to the assignees, was transferred to them; and they are authorised to sue in their own names.
An insolvent debtor, who has made a general assignment of his property cannot maintain an action in his own name, where the eause of action accrued previously to the assignment. Young v. Willing et al. 2 Dall. 276. Thus, one discharged as an insolvent debtor, on assigning all hi's property to trustees, cannot support an ejectment for land previously vested in him, though his trustees have not given bond' pursuant to the act of 4th April, 1798. Willis v. Row, 3 Yeates, 452. The interest which Frederick had, if any, was an equity of redemption, which passed to his assignees. The trustees have not released to him: the debts not being paid, they could not. It would be a fraud on the creditors. Though the surviving trustees have joined in this instrument, it is not in the character of trustees, but of creditors. The assignment is not by the body of the creditors, but only some individuals, and it is for their use, which is in fraud of the other creditors, and beyond the scope of the authority of insolvent assignees.- But if they had assigned as trustees, if all the creditors had assigned, and empowered him to sue in his own name, this would not authorise him to bring the action in his own name. The right to an equity of redemption might be a transferrable interest, and the person entitled might, on tender of the mortgage money, bring an action in his own name. But when this assignment was made, and power of attorney given, it was a right to recover a sum of money. They could no more au-thorise Frederick Stoever to bring an action in his own name, than they could a stranger. The assignee of a chose in action, must always bring the action in the name of the assignor, unless where positive law has declared he may, or the instrument ■ is negotiable. The legislature only can confer this authority: the assignor cannot. It cannot be, that two different persons possessed each a right to prosecute the same action in his own name.
For these reasons the judgment is reversed.