## Roderick Random lessee of Michael Wheeland *against* Peter Swartz, senior, and Peter Swartz, junior.

To make an instrument in the nature of a mortgage a conditional sale, the intention of the parties at the time of contracting, must be clearly proved, or necessarily implied from the circumstances attending.

EJECTMENT for 100 acres of land in White Deer township.

The case on the evidence appeared to be this: On the 3d April 1769, Michael Wheeland, the father of the lessor of the plaintiff, entered in the land office a precise application for the lands in question, which was successful. He entered into possession thereof with his family, improved the same, and died thereon intestate, in 1771, leaving a widow named Magdalena, (who intermarried with Peter Swartz, senior, in December 1772,) and nine children, of whom the lessor of the plaintiff was the eldest son. The widow administered, and the inventory was filed on the 8th January 1773. Swartz and his wife settled their administration account on the 8th February 1774, whereby there appeared a balance of 198l. 1s. 4d. in the hands of the administrators, of which the widow's share was 66l. 0s. 4¾d. and the eldest son's 26l. 8s. 2d. On the 20th April 1774, the latter executed a deed to Swartz his step-father, in fee simple, in which there was the following clause, "Provided, if I the said Michael Wheeland, my ex-"ecutors, administrators or assigns, or any of us, do and shall "well and truly pay, or cause to be paid unto the said Peter "Swartz, his executors, administrators or assigns, the above "sum of 50l. for the redemption of the bargained premises, "on or before the 1st May 1776, then the present bill of sale "to be void. But if default shall be *made in the "payment of the said 50l. then it shall remain in full "force and virtue." The consideration expressed in the deed was 50l., and the same was recorded on the 8th June 1774. On the 16th July 1785, Swartz obtained a patent for the lands, (which recited a release from six of the children to him, on the 21st November 1784,) containing 306 acres, 60 perches, and allowance.

*580]

The lessor of the plaintiff in 1791, tendered to Swartz 56l. and a re-conveyance of the premises, which he required him to execute. This was refused.

Some proof was given at the trial, that the lessor of the

[Wheeland's Lessee v. Swartz.]

plaintiff was a weak man, and that the lands in question were at least worth 40s. per acre in 1774. The defendants made additional improvements on the lands, after 1774.

Two questions were made by the defendants' counsel. 1. Whether the instrument, on which their claim was founded, was a bill of sale, or a mortgage. 2. If the former, whether there was such an inadequacy of price, as that it would be subjected to be vacated.

They urged, that neither a court of equity, nor of law, could alter men's contracts. 2 Bl. Com. 150. The substantial intent of the parties in deeds, is to be regarded. 1 Atky. 8. Here it is contended, that the plain meaning of the parties was, that the deed should be considered as an absolute conveyance, if the money was not paid on the 1st May 1776. No interest being expressed therein to be payable, is an additional circumstance, demonstrative of the parties intentions.

Where, by the express terms of a mortgage, it is agreed that if the money be not paid within a certain time, the estate shall be irredeemable, this is considered in the nature of a conditional purchase, and no redemption ought to be allowed, especially after a lapse of many years. 4 Bro. Parl. Ca. 142. So where the mortgage money is stipulated to be paid in one entire sum, and the mortgagee and those claiming under him, continued in possession for near 100 years, without foreclosing, a bill brought to redeem, shall be dismissed with costs. Ib. 369. Where there is a clause, or provision in the conveyance, for the vendor to re-purchase, the time limited for that purpose ought to be precisely observed. 1 Vern. 268. Release of an equity of redemption, and a note taken at the time, that on the releasor repaying within a year, the sum given for the lands, there shall be a reconveyance, there shall be no relief after the expiration of the time for several years. 2 Equ. Ca. Abr. 595, pl. 6. Equity will not enlarge the time for mortgagor to redeem after six years acquiescence under a foreclosure by his own consent, especially *if there have been any improvements on the estate. [*581 15 Vin. Ab. 469, pl. 13. There shall be no redemption after long possession, settlements made, and an estate improved. Ib. pl. 14. A mortgage is a pawn or pledge of lands for monies borrowed. 1 Co. 332. And though it be forfeited at common law, equity will consider the real value of the tenements, compared with the sum borrowed. 2 Bl. Com. 159. In the present instance, Swartz was put into immediate possession, and it would be highly improper to judge of the value of the lands from the present rate at which such lands would sell. The very rapid rise in lands, is a circumstance which no one could foresee, and could not possibly have been in the contemplation of the parties. In this light the present contract is analogous to the case of stock. On a mortgage of lands a bill of forclosure should be brought, but

not on a mortgage of stock. 2 Atky. 303. So a rent charge shall not be redeemable at a great distance of time, money having depreciated. Ib. 497. 1 Wms. 271. If there is a transaction between parties of the same family, and there appears an intent to benefit the lender, the court will consider it in a double aspect, and in a certain event, turn a mortgage into a purchase, contrary to the general rule. Powel on Mortg. 30. It was also contended, that this case much resembled a case determined at *Nisi Prius*, in Cumberland county, between the lessee of Walter Bell *v.* Leonard Fisher,* November assizes 1790, where such an instrument was ruled to be an absolute conveyance.

*582]     *On the second point, they insisted, that there was no great inadequacy of price; and equity will not relieve where one enters into a hard bargain, with his eyes open. 2 Atky. 251. 2 Pow. on Contra. 144.

The plaintiff contended, that the deed in question, came fully within the legal idea of a mortgage; lands having been taken as a security on a loan of money. Hargr. Co. Lit. 205. a. (note.) The want of a covenant therein for the repayment of the money, will make no difference, since such defect is no bar to a redemption. 2 Atky. 496. No unreasonable length of time has incurred, when depreciated currency which took place during the war is taken into consideration; and as to interest not being expressed in the instrument, the share of the profits of the lands which belonged to the lessor of the plaintiff, was more than an equivalent for the loan of the money, as a forbearance. The improvements made by Swartz, will give him no equity, as they were made under a full knowledge of the plaintiff's

---

* The circumstances of that case, as they appeared on the trial, were these: Joseph Hines, having purchased an improvement made on certain lands in East Pennobro' township, took a location for them on the 8th October 1766. On the 23d May 1767, being about to make a journey to New England, and having immediate occasion for money to bear his expences, Hines conveyed the lands to Robert Campbell, in consideration of 70l. as the deed purported, but the real purchase money, as proved by witnesses, was but 20l., which was then the real value of the land. And Campbell on the same day executed an instrument to Hines for securing the payment of the 20l. with a clause therein, "that if the money was not paid on the 25th July following, "that Hines should make sale of the lands, to raise the same." Campbell paid no part of the money, nor entered into the possession. On the 21st May 1770, Hines sold in pursuance of his power part of the lands to the defendant, (the same being woodland,) for 20l. and he took possession, cleared 40 acres, and otherwise improved the same for 13 years, without notice. Campbell, on the 30th March 1775, in consideration of 20l. conveyed to Hugh Moore, to indemnify him as his security; and he conveyed to Walter Bell on the 20th June 1782, who in the succeeding year, having tendered 39l. 4s., the principal and interest to the defendant, brought his ejectment.

It was ruled, by M'Kean, C. J. that the deed to Hines should be considered as an absolute conveyance, granting him full power to sell, on Campbell's not complying with his stipulations, which appeared to be the real inducement to the first sale.

Yeates, of counsel for the plaintiff.

claim. A articles to buy land, and pays part of the purchase money; afterwards he enters into several orders of court, to pay the residue by such a day, and in default thereof to give up the articles, and lose what he had before paid. Equity will relieve, though these orders have not been complied with. 2 Wms. 66.

By the court. The only question before us is, whether the deed from Wheeland to Swartz, is to be considered as a mortgage, or as a defeasible sale, subject to re-purchase, within the limited period of 2 years and 11 days?

There are certainly such words in it as are commonly found in mortgages. The reservation of the equity of redemption is couched in terms sufficiently apt and technical; and it must be deemed a mortgage, if it was not made in contemplation of an eventual arrangement of property. Powel on Mortg. 18. To make it a conditional sale, Ib. 50, the intention of the parties at the time of contracting, must be clearly proved, or necessarily implied from the circumstances attending it.

Of this, it will be admitted, there is no direct proof. What then are the circumstances, from which this necessary implication is to arise? On examination, they will be found to be very different from those which appeared in Bell's lessee *v.* Fisher, stated by the defendant's counsel.

Wheeland is said to be a weak man, by one witness of credit. His step-father on the 8th February 1774, owed him 26l. 8s. 2d. his distributive share of the personal estate of his father, and it is not pretended that he has paid it. So that on the loan of * 50l. in April following, Swartz really accom- [*583 modated him with only 23l. 11s. 10d. Would this latter sum be equivalent for 43 acres of land, to which Wheeland was then immediately entitled, and to 21½ acres in reversion after his mother's death, when those lands were actually worth 40s. per acre? It was not one fourth part of their honest value, and though mere inadequacy of price, is not a ground for a Court of Equity to vacate an agreement, yet it will shew the true intention of the parties; and in some cases will shew a command over a necessitous man, which may amount to a fraud. 2 Bro. Cha. Rep. 175. 1 Bro. Cha. Rep. 9, 22.

No stress can be laid on Swartz having the possession; because he received it on his intermarriage with old Wheeland's widow, during the minority of the children; and it is therefore distinguishable from mortgages in common cases, where the morgagor usually retains the possession. Nor can any reliance be placed on the instrument's containing no covenant for payment of the sum borrowed, or stipulation for the payment of interest, as has been properly observed by the plaintiff's counsel.

But it has been said, there has been great delay in the payment of the money. Swartz cannot complain of not being

paid in depreciated paper, during the war. And we have a law, passed 12th March 1783, which suspends the act for limitation of actions between the 1st January 1776 and 21st June 1784, a period of nearly eight and a half years. So that adding this interval to the time when the money was to be paid, there is about seven years delay of payment. Surely this length of time cannot be said to be unreasonable; but if Swartz had wanted the money and not the land, he night have compelled the payment at an early day, by suing out his *scire facias.* Even in England, the redemption of a mortgage will be decreed within 20 years after possession. 2 Vent. 340. 1 Equ. Ca. Ab. 314. 4 Burr. 1963.

The improvements made by Swartz cannot convey an equity, as he perfectly knew the circumstances under which his deed was obtained; and besides he must be supposed to have an eye to his own convenience therein, as he was entitled to one third of the lands in right of his wife, during her life, and to six tenths of the whole, which he purchased from the brothers and sisters of the lessors of the plaintiff.

The patent so far from operating in the defendants' favour, makes against him. For there appears to be a concealment of the lessor being one of them, as it recites a release from six of the children only. He appears to have studiously avoided shewing his deed in the land office.

*584]    *Upon the whole, so far from the circumstances evincing, that the deed was intended as an absolute conveyance, the contrary appears from them; and we see no reason for departing from the old maxim in equity, that an estate cannot be a mortgage at one time and an absolute purchase at another. 1 Vern. 8, 33, 190, 488. 1 Wms. 268.

Verdict *pro quer.* for two undivided tenth parts of the lands.

Messrs. D. Smith and Walker, *pro quer.*

Messrs. Hall and D. Levy, *pro def.*