## SAMUEL CABOT *et al. versus* THOMAS HASKINS *et al.*

A promise to three, upon a consideration proceeding from them and a fourth person will support an action brought by the three.

Assuming a mere ideal danger which has no foundation in fact or in law, is not a valid consideration for a promise. Thus, where a person supposed himself liable to the United States, when by law he was not, on account of property assigned to him by a debtor of the United States, and upon restoring the property to the debtor assumed the risk of his liability, the debtor promising to pay him a sum of money therefor, it was *held*, that there was no possibility of loss, in a legal sense, to the assignee, and that the promise was without consideration.

The clause in *St.* 1788, *c.* 16,[1] (of frauds,) requiring a memorandum &c. in writing, applies to a mere promise by one to pay money to another, as well as to a mutual agreement where each party stipulates to do something.

At the foot of a mortgage deed, which was not accompanied by any note or bond, and which proved, owing to a prior mortgage, to be of no value, a memorandum was written, with the assent of the mortgagers, by the attorney of both parties, and signed by the mortgagees only, stating that the sum due on the mortgage was reduced to 1000 dollars, payable in five years. It was *held*, that the signature of the mortgagers to the deed could not relate to the memorandum, and that this was not a writing signed, &c., within the statute of frauds, sufficient to charge them for the 1000 dollars.

ASSUMPSIT to recover the sum of 1000 dollars, with interest from the 10th of December, 1818.

At the trial it appeared that the defendants, being in failing circumstances, on the 26th of February, 1817, assigned all their property, real and personal, to the plaintiffs and W. Lovering junior, in trust, in the first place, to pay all bonds and debts owing from the defendants to the United States, and afterwards to pay other creditors in proportion to their respective debts, in case the property should be insufficient to pay the whole of such debts. This assignment was cancelled on the 25th of April, 1817, and a verbal agreement was then made, by which the assignees were still to hold the personal property in trust for the payment of the defendant's debts, exclusive of those due to the United States, and at the same time a deed of mortgage, unaccompanied with any note or bond, was executed and delivered to the assignees, conveying certain real estate in fee, and conditioned to be void on payment of 20,000 dollars in one year. In consideration of the premises the assignees,

---

[1] Revised Stat. *c.* 74, § 1.

under a letter of attorney from the creditors, on the same day executed and delivered to the defendants a release under seal of all demands by them represented.    Three lots of land were purposely left unincumbered by the mortgage, in order that they might be conveyed to the United States ; and lest the United States should not receive them in full satisfaction of their debt, it was agreed in writing, on the 21st of April, 1817, by the creditors who executed the letter of attorney, that their attorneys might retain so much of the property placed in their hands as should be sufficient to indemnify themselves against any claim of the United States.    The three lots mentioned were conveyed by the defendants to the United States in December, 1817, in part satisfaction of their debt, leaving a balance of about 10,000 dollars unpaid.

On the 4th of June, 1818, the defendants submitted to the attorneys a proposal, in writing, to pay them, in six months from that date, a sum of money, as a final settlement, amounting to 43 per cent. of the demands which they held, together with 700 dollars as a compensation to the attorneys for their time and labor in the business, and to receive back all the property transferred to them.    This proposal was accepted in the manner hereafter mentioned, and on the 10th of December, 1818, the attorneys received the stipulated sum, and released to the defendants all the property, excepting a parcel of land in Essex street included in the deed of mortgage, and at the same time signed a memorandum, written by W. Minot, the attorney of both parties, at the foot of the deed, acknowledging that the sum due thereon was reduced by settlement to 1000 dollars, to be paid in five years with interest, and promising not to sue or take possession under the mortgage within that period.    The deed with this memorandum remained in the possession of the plaintiffs ; but a paper of similar import, signed by the plaintiffs, was delivered to the defendants.    The land in Essex street was subject to a prior mortgage for about 14,000 dollars, and the prior mortgagee had entered and foreclosed within the five years mentioned in the memorandum.    The defendants owned only an undivided moiety of that land, and in sundry estimates given by them to the plaintiffs the moiety was stated to be subject to a mortgage for about 8000 dollars, instead of 14,000,

85

they supposing that as they owned only half of the land, their interest in it would be liable for only half of the mortgage debt.

Lovering testified that the attorneys at first declined acceding to the proposal of the 4th of June, 1818 ; that the defendants offered them 1000 dollars if they would accept it ; that the witness still declined, but the plaintiffs were willing to accept on those terms ; whereupon the defendants promised to pay them 1000 dollars with interest, in five years after the contemplated settlement, and to give them collateral security on real estate ; that the ground of refusal on the part of the attorneys was, that in their opinion the property released would be insufficient to raise the 43 per cent. and pay the United States besides, in which case they supposed the United States might call upon them to make up the deficiency ; that the 1000 dollars was intended as an estimate of this risk, and to indemnify the plaintiffs, not only for any liability on that account, but also for any trouble or expense to which they might be put in resisting the claims of the United States, if any should arise ; that it was agreed that Cabot, one of the plaintiffs, should indemnify the witness against all such liability, receiving his share of the 1000 dollars ; in consideration of which the witness withdrew his objection, and signed the written proposal, in testimony of its acceptance ; and that the promise to pay the 1000 dollars, being made to the plaintiffs, was not inserted therein, because the promise contained in that paper was a promise to himself jointly with the plaintiffs.

He further testified, that the memorandum of the 10th of December, 1818, at the foot of the mortgage deed, was made in pursuance of the verbal agreement of the 4th of June, and was intended to make the deed operate as the promised collateral security for the 1000 dollars ; and that in order to give it that effect, the attorneys, on the same 10th day of December, released all the property transferred to them, except the land in Essex street, and the witness assigned to Cabot all his remaining interest in the mortgage, for the nominal consideration of 250 dollars and a written obligation to indemnify him against the United States, and that the attorneys at the same time received from the defendants the sum agreed on, which (excepting the 700 dollars) they afterwards distributed among the creditors, re-

quiring each creditor at the time of payment to execute a bond of indemnity to the plaintiffs against all claims of the United States.

The jury returned a general verdict for the plaintiffs, on the ground, as they stated, that the consideration for the promise was as well an expected benefit to the defendants by the release of the property assigned, as the risk assumed by the plaintiffs.

*Minot* for the defendants.  The consideration for the defendants' promise moved from Lovering, as well as from the plaintiffs, he being equally liable with them to the United States, and as he is not joined in the action, the plaintiffs must be nonsuited.  This objection was taken before the verdict.

But, in truth, the plaintiffs were not liable to the United States, and so they assumed no risk ; the consideration therefore was void.  *Bartlett* v. *Prince*, 9 Mass. R. 431 ; *S. C.* 8 Cranch, 431 ; *M'Lean* v. *Rankin*, 3 Johns. R. 369.

The promise was not to be performed within one year, and there was no memorandum of it in writing signed by the defendants.  It was therefore void by the statute of frauds.  *St.* 1788, *c.* 16, § 1.  There was no fraud, nor part-performance, to take it out of the statute ; and in a court of law part-performance would not be sufficient for that purpose ; neither was it to be performed within a year upon the happening of any contingency.  *Anon.* 1 Salk. 280 ; *Fenton* v. *Emblers*, 1 W. Bl. 353 ; *Peter* v. *Compton*, Holt, 326 ; *Montacute* v. *Maxwell*, 1 P. Wms. 620 ; *Jackson* v. *Pierce*, 2 Johns. R. 223 ; *Boyd* v. *Stone*, 11 Mass. R. 342 ; *Kidder* v. *Hunt*, 1 Pick. 331. The memorandum on the mortgage was no promise by the defendants, nor was it signed by them ; and parol evidence is inadmissible, either to show that the deed and memorandum mean differently from what they purport, or to vary the written contract of June 4, 1818.

*W. H. Gardiner* for the plaintiffs.  The objection that the consideration of the defendants' promise proceeded in part from Lovering, cannot be sustained.  Lawes on Assumpsit, 56, cites *Curtis* v. *Collingwood*, 1 Vent. 297.  The plaintiffs alone might have discharged the mortgage upon the records. *St.* 1783, *c.* 37 ; *Appleton* v. *Boyd*, 7 Mass. R. 131 ; *Richardson* v. *Goodwin*, 11 Mass. R. 472.

Parol evidence was admissible to show the contract declared

*Cabot*
*v.*
Haskins.

*March 8th*
*and 9th.*

87

on, because it was wholly collateral to the written agreement o¹ the 4th of June, 1818, and between different parties. *Daven port v. Mason,* 15 Mass. R. 90.

Granting that the plaintiffs were not liable to the United States, the jury have found two considerations for the defendants' promise ; and it is sufficient that one of them was a valid consideration, the other not being illegal. Lawes, 60. A possibility of benefit to the defendants, or of detriment to the plaintiffs, will sustain a promise. Lawes, 57 ; 1 Wms's Saund. 211 *b,* note ; *Miller v. Drake,* 1 Caines's R. 46.

The contract was not void by *St.* 1788, *c.* 16, § 1, (29 *Car.* 2, *c.* 2,) of frauds. An agreement implies mutual promises ; so that an agreement " not to be performed within a year," must mean one of which neither part is to be performed within that time ; and justice requires this construction. Otherwise, if one party is to do a thing within a year, and the other an equivalent after the year, the former may perform his part of the contract, while the latter, not being bound to perform *his* part, may refuse to do it, and nevertheless enjoy all the benefit of the contract. Here the defe .dants were to pay the plaintiffs a sum of money after a year, and the plaintiffs to release property to the defendants within the year.

If this contract was originally within the statute, it is taken out by part-performance, the plaintiffs having done all, and the defendants only a part, of what they respectively undertook to do. *Earl of Aylesford's casc,* 2 Str. 783 ; *Lacon v. Mertins,* 3 Atk. 1 ; *Owen v. Davies,* 1 Ves. sen. 82 ; *Buckmaster* v *Harrop,* 13 Ves. jun. 474 ; *Morphett v. Jones,* 1 Swanst 172 ; *Davenport v. Mason,* 15 Mass. R. 85 ; *Wilkinson* v *Scott,* 17 Mass. R. 249.

But there was a sufficient memorandum in writing signed by the party to be charged. For the mortgage deed acknowledges the receipt of 20,000 dollars, and is evidence of a promise to pay that sum. A mortgage is a pledge for the payment of a loan ; it is a mere incident to the debt ; 2 Cruise's Dig. 86, 87, 89, 123 ; and the mortgager is personally liable, if the pledge is insufficient, although there be no bond or note, or other evidence of promise, accompanying the deed of mortgage. *Cope v. Cope,* 2 Salk. 449 ; *Balsh v. Hyam,* 2 P. Wms

455; *Hcwell* v. *Price*, 1 P. Wms. 291 ; *King* v. *King*, 3 P. Wms. 358. Now if a mortgage deed is *per se* evidence of debt, then the defendant's deed was a note or memorandum in writing of a promise to pay 20,000 dollars, signed by the party to be charged ; and the subsequent memorandum, signed by the mortgagees, at the foot of the deed, only shows that the debt was then reduced to 1000 dollars. But supposing that the deed was in fact merely a conditional sale of land, and not intended to imply a promise to pay money originally, yet it was by its construction capable of operating as a technical mortgage, if the parties pleased, and by the agreement of the 10th of December, 1818, it actually became security for a debt of 1000 dollars, and of course *then* became, in connexion with the written memorandum of that date, a note in writing of a promise to pay that sum. For a mortgage may be made to operate as security for subsequent and future loans, if the parties so intend ; and though the promise secured be only verbal, yet the promisee may waive the security and sue upon the contract, as much as if it were a note or bond. *Sherburn* v. *Fuller*, 5 Mass. R. 137 ; *Hills* v. *Eliot*, 12 Mass. R. 33. The parties clearly *intended* to make the existing mortgage deed security for the subsequent promise to pay 1000 dollars ; and with this intention their attorney, in the presence of the defendants, and by their direction, wrote the memorandum of December 10, 1818, immediately *under their signatures* to the deed. Now it is no matter *where* the name of the party to be charged appears, if on a paper containing the terms of the agreement and written with intent to authenticate it. *Knight* v. *Crockford*, 1 Esp. R. 190 ; *Coles* v. *Trecothick*, 9 Ves 248 ; *Ogilvie* v. *Foljambe*, 3 Meriv. 53 ; *Penniman* v. *Hartshorn*, 13 Mass. R. 87. It is equally immaterial *when* the name is written, whether contemporaneously with the agreement, or before, or after it, if written with such intent. Upon this principle printed names at the head of a bill of parcels are held equivalent to written ones ; the printing being an authenticated copy of the original writing, to which it relates. *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238 ; *Schneider* v. *Norris*, 2 Maule & Selw. 286. And if the party to be charged suffer his signature to remain on a paper the terms of which have been altered, intend-

Cabot
*v.*
Haskins

ing to authenticate the new contract, it is surely the same thing as if he wrote it anew. The counterpart of the memorandum of December, 10, 1818, made at the same time, and delivered to the defendants, being signed by their attorney in the words, " witness W. Minot," is a sufficient note to charge the defend ants, though it might not have been so intended. *Coles* v. *Trecothick*, 9 Ves. 234. And the indorsement upon it by the defendants, of the words, "receipt for 19,000 dollars," is an admission that 20,000 dollars were due upon the mortgage deed to which it refers, of which sum only 19,000 dollars were paid. It is true that the mortgage deed, being made to Lovering and the plaintiffs jointly, and the memorandum of December 10, 1818, being signed by them, would seem to be evidence of a promise to pay the four, and not the three who now sue. But distinct papers relating to the same subject will be connected to make a memorandum within the statute, although no one of them be sufficient by itself. *Saunderson* v. *Jackson*, 2 Bos. & Pul. 238 ; *Allen* v. *Bennett*, 3 Taunt. 169 ; *Jackson* v. *Lowe*, 1 Bingh. 9. So all papers executed at the same time, and as parts of the same agreement, will be taken together to make the memorandum of it relate to the proper parties ; and Lovering's assignment of his interest to Cabot, made contemporaneously with the memorandum of December 10, 1818, being connected with the deed and memorandum, and with the counterpart of the latter, which was delivered to the defendants, if competent to constitute a written memorandum of an agreement within the meaning of the statute, must be a memorandum of an agreement to pay the plaintiffs only and not the plaintiffs and Lovering jointly. And the oral testimony only corroborates the legal effect of the writings. Upon such memoranda as these the mischief of the statute is avoided. There is no danger either of fraud or perjury. The failure of the collateral security by the foreclosure of the prior mortgage, coupled with the defendants' misrepresentations of the value of their interest in the estate, would be sufficient ground, in equity at least, to take the case out of the statute. *Maxwell* v. *Montacute*, Pre. Ch. 526 ; *Joynes* v. *Statham*, 3 Atk. 388. If the plaintiffs could have got possession of the defendants' moiety by paying 8000 dollars, as was represented, they would

nave done so ; but 14,000 dollars was more than the defendants'
interest was worth.

*S Hubbard* replied.

*Gardiner*, being afterwards called upon for a further argument respecting the consideration for the defendants' promise, now contended, that it was impossible in this case to separate the risk to be incurred in doing a certain act, from the act itself, namely, restoring their property to the defendants. The plaintiffs agreed to restore the property and take all resulting hazards, only in consideration of the defendants' promise to pay them 1000 dollars for so doing. The act put them in a worse, and the defendants in a better situation. But the risk assumed by the plaintiffs was alone a sufficient consideration. They exchanged a certainty for an uncertainty. It is said they ran no risk, because by law they could not be liable to the United States. Admitting the law to be so, they could not know it. They had been assignees of all the property of the defendants, who were insolvent, under a sealed instrument, by which they were first to pay the debt of the United States. This seemed to be within the act of 5 *Cong.* 1 *Sess. c.* 128, § 65. That instrument was afterwards cancelled merely to avoid their obligation to pay the United States ; but whether the cancelling would have that effect, after they had assumed the trust, was a matter for judicial construction. *Riches* v. *Briggs*, Yelv. (Metcalf's ed.) 4 *a* ; *Brand* v. *Lisley*, ibid. 164 ; *Weston* v. *Barker*, 12 Johns. R. 278. There had been no decided c‧‧‧ in which the circumstances were precisely similar. See *Bartlett* v. *Prince*, 9 Mass. R. 438 ; *S. C.* 8 Cranch, 434 ; *United States* v. *Hooe*, 3 Cranch, 90 ; *Thelusson* v. *Smith*, 2 Wheat 425 ; *Watson* v. *Todd*, 5 Mass. R. 175 ; *Otis* v. *Warren*, 16 Mass. R. 56. These cases contemplate something which may be a notorious insolvency, even where there are no state insolvent laws. An assignment of *all* a debtor's property to pay his debts, is evidence of such insolvency at common law. The United States' Attorney might at least have thought the experiment of an action worth trying, and have subjected the plaintiffs to great expense in defending against it. To say that there was no risk supposes the theoretic certainty of the law to exist in fact. But Lord *Mansfield* thought otherwise when he

*Cabot*
*v.*
*Haskins.*

*March 18th.*

**9ⵏ**

Cabot
v.
Haskins.

held, that the event of an appeal upon a matter of law was a sufficient hazard to support a wager. *Jones* v. *Randall*, 1 Cowp. 39, 40. It is enough that the parties thought there was a risk. *Earl of March* v. *Pigot*, 5 Burr. 2802. They have estimated the risk and made a contract of insurance respecting it ; which is not illegal, because it is neither *malum in se*, nor prohibited, and not frivolous, because the parties had an interest. *Lord* v. *Dall*, 12 Mass. R. 115. This contract was known to the other creditors, so that there was no fraud in taking a bond of indemnity against any claims of the United States ; besides, the bond would not have covered counsel fees.

*S. Hubbard* in reply. The law is a science reduced to certain rules, and not like a lottery. It was settled, that the priority of the United States in cases of insolvency has no operation where a state has no insolvent law ; so that the plaintiffs assumed no legal risk. An action could not have been brought against them with the least probability of success. The first assignment, upon being cancelled, ceased to have any operation. *M'Lean* v. *Rankin*, 3 Johns. R. 369. If the United States had received an order upon the assignees and given them notice of it before the assignment was cancelled, the case of *Weston* v. *Barker* might apply.

Jan. 14th,
1826.

92

PARKER C. J. delivered the opinion of the Court. The first objection stated to the verdict in this case is, that admitting the promise, as declared on, to be proved, yet it appears that the consideration moved as well from Lovering, who was no party to the promise or to the action, as from the three plaintiffs, and therefore that the action cannot be maintained ; but, we think it immaterial from whom the consideration, if it be a sufficient foundation for a valid promise, passed. We think there is no doubt, if A advances money to B, who in consideration thereof at A's request promises to pay C, that C may maintain an action upon this promise. See the opinion of *Eyre* C. J. and the whole court in the case of the *Company of Feltmakers* v. *Davis*, and of *Buller* J. in the case of *Marchington* v. *Vernon* cited in a note to that case, and of this Court in the case of *Felton* v. *Dickerson*, 10 Mass. R. 287.[1]

---

[1] But an indebtment to three jointly is not a sufficient consideration to

98

With respect to the consideration of the promise there has been more difficulty in deciding. This consideration is proved by the testimony of William Lovering, and is in substance this, that the defendants, whose property was in the hands of the plaintiffs and Lovering for the purpose of raising money for distribution among the creditors of the defendants, proposed to the plaintiffs, who were agents and attorneys for the creditors, to pay in a short day a sum sufficient to discharge 43 per cent. of the debts, and 700 dollars to the attorneys for their trouble, provided the plaintiffs would surrender to them the property which they held and would discharge them from their debts ; that the plaintiffs declined, on account of their supposed liability to the United States for the debts of the defendants because of the property in their hands ; and that to avoid this objection the defendants promised to pay the plaintiffs 1000 dollars as and for an indemnity for the risk which they ran upon this account, which risk the plaintiffs were to take upon themselves ; and this proposition was accepted.

This promise was made upon a supposition or belief that the United States had a priority of lien upon the property of the defendants, in consequence of their declared inability to pay their debts and of the assignment of their property to the plaintiffs. If they were mistaken in this supposition and the United States had no such claim, there would be no real, but only an apparent consideration for the promise, and it would consist neither with law nor equity that the payment of this sum should be exacted.

Now it seems to be clearly settled by this Court in the case of *Prince* v. *Bartlett,* 9 Mass. R. 431, by the Supreme Court of New York in *M'Lean* v. *Rankin,* 3 Johns. R. 369, and by the Supreme Court of the United States in 8 Cranch, 431, where there was a revision of the same case of *Prince* v. *Bartlett,* that the United States have no priority in a case like this, because there was no bankruptcy and no insolvency, in the sense intended by Congress in the act whereby the priority of the United States is established.[1] There seems to be then no

support a promise to one separately for his portion of the debt, either express or implied. *Vadakin* v. *Soper,* 1 Aiken, 287.

[1] *Watkins* v. *Otis,* 2 Pick. (2nd ed.) 102, note 1

Cabot
*v.*
Haskins.

valuable consideration for this promise to stand upon, and the money, if paid, would be paid for nothing.

We cannot suppose that a mere ideal danger, which has no foundation in fact or in law, can form the substratum of a contract by which the one who assumes it can claim indemnity. Even in the contract of insurance there must be some risk to entitle a party to the premium, and if it turns out that there was none, although some may have been supposed at the time when the contract was made, the premium cannot be recovered.

There must be as a legal foundation for a promise, either an actual damage, or a suspension or forbearance of right, or a possibility of loss occasioned to the one to whom the promise is made, to give it validity. It is not material that any actual benefit should accrue to the party undertaking. *Vide* 1 Wms's Saund. 211, note 2 ; 2 Wms's Saund. 137, note 2. Here was no damage, nor any forbearance or suspension of right, nor any possibility of loss in the legal sense of that phrase, for it had long before been decided by the ultimate authority that the United States had no claim.[2]

It has been urged by counsel, that the sum promised was part of the consideration for giving up the goods, or at least was a compensation to the plaintiffs for their trouble and responsibility ; but this latter was compensated for by the 700 dollars which were stipulated to be given ; and with respect to the former, if it was the consideration for giving up the goods, it should seem to belong to the general fund for distribution among the creditors, whereas it was intended for, and is now claimed by, the plaintiffs to their own use. Indeed the testimony of Lovering puts this in a clear light, for he states, that this 1000 dollars was an indemnity only for the supposed liability of the four agents, of whom he was one, and it was so treated by them, for he assigned over his quarter part upon an indemnity against this liability. We are bound to consider this the only consideration, and for the reasons given, it is insufficient.

It is true that the jury stated it as their belief, that the promise was made, as well on account of the benefit expected by the defendants, as for the risk assumed by the plaintiffs, but

---

[2] *Hunt* v. *Swain,* 1 Lev. 165; *Jones* v. *Ashburnham,* 4 East, 455; *Tooley* v *Windham* Cro. Eliz. 206; *Lent* v. *Padelford,* 10 Mass. R. 236.

there is no evidence from which they could legally infer that
this expected benefit made part of the actual consideration. It
was without doubt a motive or inducement to them to yield to
the claims of the other party, but was not the consideration, in
a legal point of view, of the promise. A man may have motives
of self-convenience to promise to pay the debt of another, but
yet without a legal consideration such a promise would be void.

    Such being our opinion upon this point, we might be relieved
from the necessity of considering the application of the statute
of frauds, in relation to which much argument and ingenuity
have been exhibited. This promise was to be performed only
at the end of five years from the time when it was made ; so
that, if it be within the words or the clear meaning of the statute,
and it be not in writing, no action can be sustained on it. It
was argued that the statute intended only mutual agreements,
in which both parties stipulate to do something, and not a mere
promise by one to pay money to another ; but we do not find
that such a construction has ever been given to the statute; nor
would such a construction comport with the obvious intent of
the legislature, which was to require written proof of contracts
to be performed in future, in order that the uncertainties re-
sulting from verbal testimony might be avoided.

    It was urged also, that the plaintiffs were to deliver the goods
within six months, and that where there is a mutual agreement,
and either party is to perform in less than a year, the contract
is not within the statute.[1] This proceeds upon the hypothesis
that the delivery of the goods made a part of the consideration
for this promise, which we have before seen is not the case.
We consider this contract respecting the 1000 dollars as wholly
independent of the compromise. The latter was made for the
benefit of the creditors, the former for the benefit of the plain-
tiffs alone. They seem to be wholly independent of each
other.

    Nor is the promise in writing within the terms of the statute.
It must not only be in writing, but it must be signed by the
party to be charged. It is true that much liberality has been
used in regard to this requisition of the statute, so that if the

Cabot
*v.*
Haskins.

95

---

[1] See per *Lord Ellenborough*, 11 East, 152; per *Abbott* J., 1 Barn. & Ald. 727

name of the party appears on the instrument, written by himself, though not signed, in the common understanding of that term, it has yet been held sufficient. But the memorandum at the foot of the mortgage is the declaration or acknowledgment of the plaintiffs, not of the defendants ; their name is nowhere written by themselves, so that it would certainly be an unwarrantable stretching of the statute, to call that memorandum a writing signed by the defendants who are to be charged.

As to the suggestion, that the agreement has been partly performed and so ought on principles of equity to be enforced,[2] that depends again upon the question, whether the agreement to deliver the goods formed the consideration of the promise to pay the money, and upon this we have given our opinion.

We see no evidence of fraud on the part of the defendants in relation to the incumbrance on the mortgaged estate ; they might honestly suppose that only one half of the debt attached to the moiety of the premises conveyed by them ; and if there were fraud in this particular, we do not see how that can supply the want of those formalities which the law requires to substantiate a promise, which by the terms of it is not to be executed until more than a year has elapsed from the time of making it.

*Verdict set aside.*

---

[2] The provisions of this statute render a parol contract void, if it appear to have been the understanding of the parties at the time, that it was not to be completed within a year, although it might be, and was in fact, in part performed within that period. *Boydell* v. *Drummond,* 11 East, 142; *Bracegirdle* v. *Heald,* 1 Barn. & Ald. 722; *Squire* v. *Whipple,* 1 Vermont R. 69; Chitty's Contr. (3d Amer. edit.) 207, 208 ; *Lower* v. *Winters,* 7 Cowen, 263 ; *Snelling* v. *Huntingfield,* 1 Crompt. Mees. & Roscoe, 20; *S. C.* 4 Tyr. Exch. R. 606.

The statute of frauds has no application to a contract, that has been fully performed on both sides. *Stone* v. *Dennison,* 13 Pick. 1.

Whether a part-performance is ever an answer to the statute, except in courts of equity, *quære.* *Squire* v. *Whipple,* 1 Vermont R. 69. See *Stone* v. *Dennison,* 13 Pick. 1; *Bates* v. *Moore,* 2 Bailey, 614. But where a contract within the statute of frauds has been in part executed by one party, there is a plain remedy for such party to a certain extent, in a court of law, if the other party fraudulently refuses to execute the contract on his part. If money has been paid, it may be recovered back. If labor has been performed a compensation for it may be recovered. *Lane* v. *Shackford,* 5 N. Hamp. R. 133; *Holbrook* v. *Armstrong,* 1 Fairfield, 31; *Kidder* v. *Hunt,* 1 Pick. 328 ; *Little* v. *Martin,* 3 Wendell, 219; *Shute* v. *Dorr,* 5 Wendell, 204; *Burlingame*

---

v. *Burlingame,* 7 Cowen, 92; *Gary* v. *Hull,* 11 Johns. R. 441; *Donellan* v. *Read,* 3 Barn. & Adol. 899.  Equity will relieve in cases of part-performance. *Marks* v. *Pell,* 1 Johns. Ch. R. 594; *Strong* v. *Stewart,* 4 Johns. Ch. R. 167; *Washburn* v. *Merrills,* 1 Day, 139; *Daniels* v. *Alvord,* 2 Root, 196; *Ross* v. *Nowell,* 1 Wash. 15; *Watkins* v. *Stockett,* 6 Harr. & M'Hen. 24 ; *Wilcox* v. *Morris,* 1 Murphey, 117; *Wilcox* v. *Carver,* 1 Haywood, 93; *Belton* v. *Avery,* 2 Root, 279, *Wheeland* v. *Swartz,* 1 Yeates, 579; *Mackey* v. *Brownfield,* 13 Serg. & Rawle, 239 ; *Crocker* v. *Higgins,* 7 Connect. R. 342.

An agreement to marry within five years, is within the statute.  *Derby* v. *Phelps,* 2 N. Hamp. R. 515.