[PHILADELPHIA, FEBRUARY 4, 1833.]

## NEIDE *against* NEIDE.

APPEAL.

Testator devised as follows :—" Principally and first of all, I give and bequeath to my eld-
est son, *J. N. my late purchase* from *E. C.*, as *also*, four acres of woodland being in a cor-
ner," &c.   The land purchased from *E. C.*, was purchased in fee simple, and *held*, that
a fee passed to the devisee, both in the land purchased from *E. C.*, and in the four acres
of woodland.

THIS was an ejectment for land, in *Delaware* county, brought by
*Joseph Neide* against *Jacob Neide*.   On the trial of the cause in the
Circuit Court of that county, the following case, in the nature of a
special verdict, was stated for the opinion of the court :—

" *Joseph Neide*, the elder, being seized of the premises mentioned in
the declaration, (about twenty-eight acres eighty-eight perches,) duly
executed his last will and testament, written by his own hand, on
the 19th day of *May*, 1796, which was duly proved and recorded
on the 29th of *December*, 1798, (prout the said will as follows:)

" In the name of God Amen.   I, *Joseph Neide*, of *Delaware* county,
in the state of *Pencilvania*, being in perfect *helth* of body and sound
mind and memory, thanks be to God, therefore, do this *nineteeth* day
of *May*, in the year of our Lord Christ one thousand seven hundred
and ninety-six, make and publish this my last will and testament in
manner following, to wit : *principally and first of all*, I give and be-
queath to my eldest son, *John Neide*, my late *purches* from *Elizebeth
Claxton*, as *also*, four *akers* of woodland, being a corner, lying be-
tween the *Bristo* field and *Sharplesis'* land, further, I give to my son,
*John Neide*, the corner piece of *mash* from the cross bank out to *lo
low*-water mark, with a privilege to *pas* and *repas* to and from said
*mash*, through the plantation, also to quarry stone *be on* the side of
said *mash*, as *allso*, I give and *beqeath* to my son *John*, one *hors* and
one cow.—Secondly, I give to my daughter *Mary*, the sum of one
hundred pounds, to be paid out of my estate at different times within
the space of five years after my *deceace*.—Thirdly, I give to my
daughter *Rebecka*, the sum of eighty pounds, to be paid in eight years,
at ten pounds a year.—Fourthly, I give and bequeath to my daugh-
ter *Elizebeth*, the sum of one hundred pounds, to be paid in eighteen
months after my *deceace*.—Fifthly, I give and *bequeat* to my daugh-
ter *Abegal*, the sum of fifty pounds, when she shall *arive* to the age
of twenty one years, and if she should die before that time, to be
*devided* among the living.—Sixtly, I give to my son *Jacob*, the sum
of fifty pounds, to be paid to him in one month after my *deceace*.—

Seventhly, I give and bequeath to my son *Benjamin*, twenty *akers* of land, to be taken in the *Bristo* field, to begin at *William Swaffers'* line, and running from thence by the percimen tree to the great road.—*Eightly*, I give to my *grandaughter*, *Elizebeth Evans*, *hur maintainnance til* she shall *arive* to the *adge* of eighteen years, to come out of my estate by my executor.—Ninthly, I give to each of my *granchildren*, of my daughter *Sarah*, one silver *dollor* a *peace*.

" Farther, I give and bequeath to my *molatto* boy *Tom*, the sum of five pounds, to be paid by my executor.

" And I do give and bequeath the remainder of my lands not *heire-t'fore* willed, to my son, *Joseph Neide*, but in case he should die without issue, then my son, *John Neide*, shall have two *shairs*, and the remainder to be *equealy devided* amongst the survivors, and further, I do constitute and appoint my son, *Joseph Neide*, sole executor of this my last will and testament, hereby revoking all other wills and testaments *hereunto* by me *maid*.    I witness whereof, I have hereunto set my hand and seal.

*Joseph Neide*, [L. s.]

" Signed, *seald*, published and declared in presence of *William Kerlin, John Caldwell, Pierce Powers.*"

" *Joseph Neide*, the elder, died in the year 1798, and *John Neide*, took possession of the premises laid in the declaration.    He died in possession, on the 24th of *September*, 1830.

" *Joseph Neide*, the younger, mentioned in the will of the testator, died in the year 1806.

" The plaintiff is the only son of *Joseph Neide*, the younger, who entered into possession, under the will of his father, of between two and three hundred acres of land, in the township of *Chester*, not being the same land mentioned in the declaration.

" ' The purchase,' made by *Joseph Neide*, the elder, of *Elizabeth Claxton*, was of twenty-three acres and sixty-two perches, *in fee simple ;* as per deed of 16th *June*, 1785.

" *John Neide*, by his last will, dated 24th of *September*, 1830, devised to the above defendant, all his estate, real and personal, in fee simple.

" *Joseph Neide*, the elder, at the time of his death, had eight children.

" Of these, the following now survive, *viz.*: *Ann Mary*, (now *Evans*,) *Rebecca*, (now *Dicks*,) *Abigail*, (now *Hall*,) *Jacob*, and *Benjamin*.

The following are deceased, leaving issue :—*Elizabeth*, who left seven sons, *Joseph*, who died intestate, leaving the plaintiff, his only son and two daughters; one of whom is since deceased without issue.

" The following died in the lifetime of the testator :—*Sarah*, (who married *Elisha Evans*,) leaving issue, five children.

" *John Neide*, died as aforesaid, without issue.    At the time of the making of the will of *Joseph Neide*, the elder, and at the time of

his death, his son, *Joseph Neide,* the younger, was unmarried, and without issue.

· " The quarry referred to in the devise to *John Neide,* is not on the premises laid in the declaration.

### Points.

" 1. The plaintiff contends that under the will of *Joseph Neide,* the elder, *John Neide,* took but an estate for life in the premises laid in the declaration.

" 2. That *Joseph Neide,* the younger, took in those premises an estate tail.

" The defendant denies both these propositions, and contends that *John Neide,* took in those premises a fee simple.

" By agreement, such judgment is to be entered, as the law and the facts will warrant."

The judge who held the Circuit Court, for the purpose of bringing the case before the court in bank, gave judgment for the plaintiff, and an appeal was entered by the defendant from his decision.

*Dick* and *Tilghman,* for the appellant:—*John* took a fee. The will was written by the testator himself, who, though an illiterate man, has made his intention manifest. It is the right of every man, to make his own will, and to express his meaning in his own way. If the intention plainly appear, and be not contrary to the policy of the law, it must be carried into effect, no matter how awkwardly it may be declared. An unlettered man, often uses words in a different sense from that in which they would be understood by a grammarian or a lexicographer, and it is the business of courts, to endeavour to ascertain the meaning affixed to them by the person by whom they are employed, and to give them effect accordingly. *Morrison* v. *Semple,* 6 *Binn.* 97. *Steele* v. *Thompson,* 14 *Serg. & Rawle,* 98. *Cassell* v. *Cooke,* 8 *Serg. & Rawle,* 289. The question then is, what did the testator, *Joseph Neide,* mean by his devise to his son *John?* His intention is to be gathered from the will alone, and from the whole will, and it is so clearly expressed, that no plain man, whose mind is not narrowed by legal technicalities, can entertain a doubt on the subject. The testator was an uneducated old man, the father of nine children, and sat down to make a disposition, in his own way, of all his property, and a provision for all his children. His main intent is to provide for his eldest son, the primary object of his bounty, the devise to whom is introduced, with very remarkable language, strongly serving to illustrate his views. The words " *principally, and first of all,*" would not be satisfied by giving to *John,* in reference to whom they are used, merely an estate for life, in the property devised to him. The subject of the devise to *John* is, the testator's " *late purchase*" from *Elizabeth Claxton.* It is impossible that he should have intended, by these words, to describe either the locality or the extent of the land he had purchased; he must have meant, that *John* should have all his estate and property in it; all that he

(Neide *v.* Neide.)

acquired by that purchase, he gave to his eldest son, and as he pur-chased an estate in fee simple, he gave an estate in fee simple, by that devise. Wherever the words of the will describe merely the sit-uation of the property devised or serve to identify it, an estate for life passes, but where they refer to the interest of the testator in it, they pass that interest; thus " estate," " effects," " substance," " all I have in the world," with many others of similar import, carry a fee. 3 *Preston on Abst.* 158.   2 *Preston on Estates,* 87 to 187.   *Bailis* v. *Gale,* 2 *Ves. Sr.* 48.   *Scott* v. *Audrey,* 3 *Atk.* 493.   2 *Lev.* 91.

The twenty-three acres, purchased from *Elizabeth Claxton,* were the principal devise, and having ascertained the estate which the de-visee took in that, the question is determined as to the interest he ac-quired in the four acres of woodland, subsequently devised. The latter was an accessary to the former, and followed its nature. Whatever estate was given in the one, was given in the other. The two de-vises are connected by the word *also,* which is synonimous with *in the same manner,* and consequently, if a fee is given in the *purchase* from *Elizabeth Claxton,* a fee is given, *in the same manner,* in the four acres of woodland. If an estate for life only was given in the woodland, *John* would have the burthen of paying taxes imposed upon him, without deriving the smallest advantage from the devise, and as it is supposed, that a benefit is intended by every devise, the court will not give to a will such a construction as that contended for on the other side, unless the language of the testator imperatively re-quires them to do so. The intention of the testator, with respect to the devises in question, is further shewn by other parts of the will. After having disposed of his real estate, he proceeds to make a dispo-sition of his personal property, and couples the two descriptions of property by the word also; *also,* ' I give and bequeath to my son *John* one horse and one cow;' that is, in the same manner that I have given him the land, I give him the personal property, and as the es-ate given in the latter was absolute, that given in the former was absolute too. This is the only construction which will ensure harmo-ny and symmetry; any other, will produce discord, confusion and absurdity. If, according to the opposite construction, *John* takes an estate for life, with a remainder in tail to *Joseph,* then *John,* in the event of *Joseph* dying without issue, is to take two shares of an estate which is not to be brought into existence, until after his death, and yet it is the same estate of which he is to enjoy the whole during his life. This is the conclusion at which the opposite argument must necessarily arrive, and it is so absurd, as to destroy the argument altogether. They also cited 2 *Preston on Estates,* 103, 104. *Pells* v. *Brown, Cro. Jac.* 590.

*Engle* and *J. R. Ingersoll* for the appellee.—It is to be lamented, that the adoption of the *English* rule, in the construction of devises, should in *Pennsylvania,* so frequently defeat the intention of the tes-tator; but judges are not legislators, and it is now too well settled to

be disputed, that a general devise of land, without limitation, passes only an estate for life. The will under consideration, contains no words, legally denoting an intent to give a fee simple. The word, *estate*, which it has frequently been decided carries the fee, refers not only to the subject-matter of the devise, but to the duration of interest. But the word, *purchase*, conveys no idea of interest. It is merely a term of description, used to distinguish the particular property devised from other property. *Loveacres v. Blight, Cowp.* 355. 2 *Preston*, 69. *Morrison* v. *Semple*, 6 *Binn.* 97. *Steele* v. *Thompson*, 14 *Serg. & Rawle*, 84. A devise of a certain number of *shares*, in the *New River*, a word much more comprehensive than *purchase*, was held in *Middleton* v. *Swain, Skinner*, 339, to give only an estate for life. The intention to give a fee simple, must be clear and unambiguous, otherwise the rule of law must take place. There must be express words or necessary implication to defeat the title of the heir at law. If the language be of doubtful import, he cannot be disinherited. The devise in question, has no words indicating an intent give an inheritance, and there is nothing which by a fair interpretation, can be made to supply the want of them. Where the words are not of themselves sufficient to show an intention to give a fee, it may be inferred from something being superadded, which is obviously inconsistent with the idea of an intention to give a less estate. Such a result takes place where a general devise is charged with the payment of a sum of money; but in no instance has a word of similar import to the word *purchase*, been held to pass a larger interest, than an estate for life, unless something in the nature of a charge was superadded to it. *Busby* v. *Busby*, 1 *Dall.* 226. *French* v. *M^cIlhenny*, 2 *Binn.* 20. *Lessee of Caldwell* v. *Ferguson*, 2 *Yeates*, 250. *Doughty* v. *Browne*, 4 *Yeates*, 179. *Campbell* v. *Carson*, 12 *Serg. & Rawle*, 54. *Green* v. *Creamer*, 2 *Yeates*, 378. *Grayson* v. *Atkinson*, 1 *Wils.* 333. *Right* v. *Sidebotham*, 2 *Doug.* 762. *Lessee of Burkart and Willis* v. *Bucher*, 2 *Binn.* 455. *Lessee of Willis* v. *Bucher*, 3 *Wash. C. C. R.* 369.

*Joseph* had an estate tail by necessary implication. The intention was to provide for his issue, which could be effectuated only in this way. The court must give a construction to the whole instrument, and not such a one as will create an intestacy as to any part of the testator's estate. Every thing is embraced in the sweeping residuary devise to *Joseph*, of "all the remainder" of the testator's "lands not heretofore willed," and in case he should die without issue, then over. He had willed to *John*, only an estate for life, and this devise carried the remainder of the estate in the lands given to him to *Joseph*, in tail, an indefinite failure of issue being contemplated, which creates an estate tail. *Hopewell* v. *Ackland*, 1 *Salk.* 239. *Hyley* v. *Hyley*, 3 *Mod.* 228. 1 *Roberts on Wills*, 439. 442. *Attorney General* v. *Sutton*, 1 *P. Wms.* 758. *Lessee of Haines* v. *Witmer*, 2 *Yeates*, 400.

The opinion of the court was delivered by

(Neide *v.* Neide.)

Huston, J.—*Joseph Neide*, the grandfather of the plaintiff and father of the defendant, made his will, written by himself on the 19th day of *May*, 1796, which was proved on the 29th day of *December*, 1798; he was a farmer, and not learned, as appears by the spelling, which is very incorrect. After a short preamble, it contains as follows:—" Principally, and first of all, I give and bequeath to my eldest son, *John Neide*, my late *purches*, from *Elizebeth Claxon*, as also, four akres of woodland, being a corner laying between the *Bristo* field and *Sharplesses'* land, further I give to my said son *John*, the corner piece of *mash* from the cross bank out to *lo* low water mark, with a privilege to *pas* and *repas* to and from said *mash*, through the plantation, also to quarry stone *be on* (beyond) the said mash, as also, I give and bequeath to my son *John* one *hors* and one cow." He then gave to each of his five daughters a legacy in money; and to his son *Jacob* fifty pounds to be paid in one month after his decease. Then to his son *Benjamin*, twenty acres to be taken in the *Bristo* field, to begin at *William Swaffers'* and running from thence by the *Percimen* tree to the great road; then other small devises to some grandchildren, and to a mulatto boy, and proceeds, " and I do give and bequeath the remainder of my lands not *heretofore* willed to my son *Joseph Neide*, but in case he should die without issue, then my son *John Neide*, shall have two shairs, and the remainder to be equally divided among the survivors," and appointed *Joseph* his executor.

It has long ago been said, that after the statutes of wills in the time of *Henry* 8, the devisee was called for want of a better term, and to distinguish him from the heir, a purchaser, and the will of a testator was compared to a deed, and the same, or nearly the same, legal accuracy in designating the quantity of estate, was required in a will, which was requisite in a deed. As the now common accomplishment of writing was then rare, and some of the learned must be applied to before a writer could be found, the inconvenience was not in those days great. Within a century, however, more in proportion could write, though they could not write in legal phrase; and it became a question, what words pass a fee in a will. Lord Hobart, than whom, says Chief Justice Willes, " a greater man never lived," laid down some principles which are law yet, and beyond which the law has not advanced much, though other expressions than those on which he decided, have been held within the principle he laid down. In Hobart, page 2, *Widlake v. Harding*, the testator devised to his cousin *Agnes Harding*, and her assigns, his dwelling house for ninety-nine years, " and my said cousin *Agnes Harding*, shall have my inheritance, if the law will allow it," and adjudged she took a fee. In page 32 of his reports, we find this expression, " If a devise do sufficiently and certainly shew the intent of the devisor in the substance, though the circumstances fail, or be defective, I care not." In page 75, *Spark* v. *Purnell*, he says: " If by my will I say *J. S.* shall be heir of my lands, he shall have it in fee; this though *J. S.* is no relation,"

(Neide *v.* Neide.)

I shall notice only a few of the many cases on this subject, observing that many judges have said, that when an unlearned man gives a horse, and in the same sentence or a different one gives a house, and the courts decide that each shall not hold absolutely and forever, they always disappoint the intention of the testator. I admit, however, that we are not at liberty to decide that a simple devise of lands to a man unconnected with any thing else passes a fee, for we would by so doing, unsettle estates for some years back. The legislature alone can do it prospectively.

Where the words used, not only apply to land, but to the quantity of interest which the testator has in it, or which he disposes of, that interest passes. There are many contradictory cases, as between, 'I give my estate,' and, 'I give my estate in *A.*,' or, 'my estate at *A.*' but the law seems to have settled down in this, that each of these expressions passes a fee, unless restrained by other parts of the will. —' All my effects'—' whatever else I have in the world;' (*Talbot's* cases, 286 ;)—' all I am worth,' ' what I die possessed of,' ' what is left after my debts are paid,'—the words, property,—substance, and many others have been held to pass a fee. In short, there has been an astuteness to find a meaning which can justify or excuse the courts in giving a fee where it is plain the testator intended it ;— and though some judges have held in some cases that their predecessors had gone too far, and have doubted some of the decisions, yet the current has still set in the same direction, and cases doubted by one judge have been considered clear of doubt by his successors. I refer to the authorities collected in 2 *Preston on Estates*, from 90 to 186, in *Roberts on Wills*, *Powel on Devises*, and many other books.

It is apparent however that it is not so much the particular word or phrase used, as the context, or the scope of the whole will, which passes the fee ; every word and expression in the English language has different meanings in connection with different words or applied to different subjects. The express devise to a man and his heirs and assigns, is often cut down by other expressions or by being applied to a long lease, to estate tail or to an estate for years ; and so a devise without words of addition may carry a fee if the expression used shows that the testator had in view the quantity of interest as well as the description of the property given. The rule once was, that the heir at law cannot be disinherited by any other than express words or necessary implication. In *Fagge v. Heaseman*, *Willes*, 141, Chief Justice WILLES shews, that this rule though often repeated has not been acted on, and is inconsistent with many decisions of judges who have used it, and he says the true rule is, that it ought plainly to appear to be the intent of the testator, or the heir will not be disinherited.

In our own courts the same principles have been laid down in nearly the same words. 2 *Binn.* 19. 6 *Binn.* 97. 1 *Yeates*, 250, 380. 9 *Serg. & Rawle*, 434, and other cases.

In this will the word heirs no where occurs. The words *my late*

(Neide *v.* Neide.)

*purchase* as used, may and naturally do as well as a description of the
property include a description of the estate or interest in the prop-
erty. The case in 2 *Vesey,* 48, has nearly the same phrase and was
held to pass a fee. But it was contended the devise to *Joseph* of the
remainder of his lands not heretofore willed, showed that *John* had
only a life estate and the remainder to *Joseph.* The answer is, that
he gives to *Joseph* the remainder of his lands not before willed; not
the remainder of his estate in those lands, and further that this con-
struction will make the will absurd. The testator could not have in-
tended to give to *John* for life, and after his death to *Joseph,* and
after *Joseph's* death two shares to *John.* There were other lands not
before mentioned to satisfy the devise to *Joseph*; those lands he gave
to *Joseph,* and no others.

On the whole, we have found no case directly in point. The case
above cited in 2 *Vesey,* 48, is the nearest to it. The very words ' I
give my new purchase,' &c. are put in *Hobart,* 32, as an example
that a fee may pass by those words in a certain connection with
other words; we think however that the phrase, ' my late purchase,'
is equivalent to, ' what I lately purchased,' and that would describe
the interest given as well as the property given. The ' four acres of
woodland' is so coupled with ' the late purchase,' that it goes as the
other does, that is, in fee. *John* then, having devised this property
to *Jacob,* the fee simple is in *Jacob,* and judgment must be entered
for him.

                                        Judgment for the defendant.