By the Court,

Bronson, J.
The judge having decided that the devisees, Henry and Isaac Thorne, took a fee in the land under the will of their mother, it is impossible to say that the jury have passed upon any other question made on the trial. We can therefore take no notice of the question of adverse possession, nor inquire whether a sufficient foundation was laid for the presumption that the charges created by the will, in favor of Abigail and Thomas, have been satified. We are left to the single inquiry, whether Henry and Isaac Thorne took a fee under the will, on the death of their mother.
The will is very inartificially drawn; but the intention of the testatrix, which must be our pole-star in the construction of such instruments, may, 1 think, be ascertained with a reasonable certainty. The leading features of the will are, that the rents and profits of the land should go to Thomas and Abigail for a limited period after the death of the testatrix; that when Abigail should be married, or attain the age of twenty-one years, if not before Henry and Isaac should have the estate, and should pay an equal part of the value to Thomas and Abigail; that in ease Abigail should die unmarried, and before she attained the age of twenty-one, the land [398] should be equally divided between Henry, Isaac and Thomas; and in any event, the testatrix intended to dispose of her whole interest or estate in the land, leaving nothing to descend to her heirs at law. On this general outline of the will, the question is, how far and' in what manner can the intention of the testatrix be carried into effect, without violating the rules of law.
Although the devise to Henry and Isaac contains no apt words for passing a fee, yet I think it apparent, upon several grounds, that the testatrix intended to dispose of her whole interest or estate in the land. After the usual prefatory matter, she commences the will by saying, “ As for my temporal estate, I give and bequeath in manner following.” The word estate, when used to denote the quantum, of interest or property, and not as a mere description of the land devised, is sufficient in a will to pass a fee; and so is any other word or form of expression which clearly indicates the purpose of the testator to dispose of his whole interest in the property devised (Hogan v. Jackson. Cowper, 299; Jackson v. Merrill, 6 Johns. R. 185; Jackson v. Babcock, 12 id. 389; Jackson v. Housel, 17 id. 281). It is true, that the introductory clause is never conclusive in the construction of a will, and without some appropriate word in the body of the devise, will not be sufficient to carry a fee. Still, this clause is regarded as very material to the inquiry concerning the purpose of the testator in relation to the quantum of estate devised. Introductory words, says Lord Mansfield, in Hogan v. Jackson, can not vary the construction of a devise, unless there are words in the devise itself sufficient to carry the degree of interest contended for; but wherever they assist to show the intention of the testator, the courts have laid hold of them as they do of every other circumstance in a will, which may help to guide their judgment to the right and true construction of it. See also Earl v. Grim (1 Johns. Ch. 494; Finlay v. King, 3 Peters, 379). Mr. Preston concludes a review of the English cases on this subject by the remark, that the introductory clause in a will is a key to the intention of a testator, and, in its application to a clause of devise, is of the [399] same effect as the preamble of a statute is to the enacting clause (2 Preston on Estates, 206).
Taking this key to the intention of the testatrix, let us now proceed to examine other parts of the will. By the second clause, she gives ¿62 to her son William “ as an acknowledgment, and in lieu of his birth-right.” This *226 plainly manifests the purpose of excluding William from the inheritance. He was, in no event, to take any thing beyond the pecuniary legacy. Then by the third clause, the property in question is devised to Henry and Isaac, but without any words sufficient to carry a fee. By the sixth clause, it is provided, in a certain event, that “the real estafé shall be valued, and the said Henry Thorne and Isaac Thorne shall, and they are respectively required to pay an equal part of my estate to the rest in cash.” Although the words real estate, as here ¿ísed, may, in one point of view, be regarded as only descriptive of the land or thing devised, yet in another, they must, I think, be taken as denoting the quantum of interest which the testatrix had in the land. Being owner of the fee, she directs that “ the real estate shall be valued.” Value when applied without qualification to property of any description, necessarily means the price which it will command in market. It supposes that the purchaser is to acquire a perfect title, or the unlimited right to dispose of the property at pleasure. The value of a lot of land is the price which can be obtained from a purchaser on conveying to him a fee, or the right of absolute dominion over the property. When the testatrix, without any qualification, directed the real estate to be valued, she evidently intended that an estimate of its worth should be made, in reference to the interest which she had in it. If this construction needed any confirmation, it would be found in the words which follow in the will. Henry and Isaac are to pay “ an equal part of my estate to the rest.” The four children were to have the whole estate in equal shares; but this was to be effected by giving the land itself to Henry and Isaac, and requiring them to pay an equivalent for two shares, or one half of its value, to Thomas and Abigail. In [400] the concluding part of the sixth clause, the testatrix again speaks of “ my said real estate,” and, in a certain event, directs that it be equally divided between Henry, Isaac and Thomas. Here, as elsewhere throughout the clause, she was evidently speaking of her whole interest in the land, and plainly intended to dispose of the fee.
Beading the third clause, by which the property is devised to Henry and Isaac in terms which import that they were to take a present interest (3 Peters, 376), in connection with the sixth clause, which goes to fix the quantum of interest, I can not entertain a doubt that the testatrix intended the devisees should take a fee; and the words which she has employed are sufficient to give effect to that intent, without transgressing any rule of law. In Grayson v. Atkinson (3 Wills. 333), Lord Hardvvicke remarked, that “ intention at first is one thing, and the execution of that intention is another.” In this case, the testatrix has, I think, executed her intention, by using such language in the devising clauses as will carry her whole interest in the land to the devisees.
But there is another view of the case, which I think entirely decisive of the question. By the third clause of the will, the land is devised to Henry and Isaac; but the words, standing alone would only carry a life estate. Then follows the sixth clause, by which a charge is created on the persons of the devisees in respect of the estate devised. In every such case, the devisee will take a fee by implication, unless there be other words in the will which go to limit the quantum of interest. Here the charge is equal in amount to one half the value of the land; but however small the charge may be, if "the devisee is required to pay a gross sum out of, or in respect of, the land devised, that which would otherwise only be a life estate, will be enlarged to a fee. This rule of construction is founded on the principle, that if the devisee only took a life estate, he might be a loser by taking under the will, he might die before he had received from the land the sum which he had paid. Where the charge is on the land, instead of the person of the devisee, or on the rents and profits of the land, the rule is otherwise. There has been *227 some difficulty in the application of the rule, in cases where there was room for doubt whether the charge was on the estate, or on the person of the devisee. But here the charge is plainly on the persons of the devisees, and in cases of this description, the books speak a uniform language (Jackson v. Merrill 6 Johns. R. 185; Jackson v. Bull, 10 id. 148; Jackson v. Martin, 18 id. 31; Collier's case, 6 Coke, 16). It would be easy to multiply authorities on this point to an indefinite extent; but the labor would be useless.
If upon the true construction of the will, Henry and Isaac Thorne took a fee in the land on the death of their mother, it may be proper to inquire whether the intention of the testatrix in relation to other matters can be carried into effect. I think it can. It is not absolutely essential that the will should be executed in the precise form contemplated by the testatrix. Indeed, upon any construction, that is impossible. It is enough that the substance is preserved, and that the will be carried into effect as near as may be in the manner which she has prescribed.
In the events which have happened, it is not very important to consider the contingent limitation over in case Abigail should die under age and before her day of marriage. In that event, Thomas was to share the estate with Henry and Isaac. But the proper rule seems to be, to construe the will according to the existing state of things at the time of the testator’s death (Jackson v. Billinger, 18 Johns. R. 381). It was at that time possible that Thomas would ultimately become entitled to share the estate with his two brothers. This direction might, I think, take effect as an executory devise. But if the will was incapable of execution in this manner, it will not aid the plaintiff, for I can perceive no other possible form in which Thomas could ever take under the will. If the limitation over on the death of Abigail was void, then Henry and Isaac had a fee, which could in no event be defeated as to any portion of the estate. But I see no reason to doubt that the limitation was valid, and might have taken effect as an executory [402] devise.
By the third clause of the will the testatrix, after devising the property to Henry and Isaac, proceeds as follows: “ But on this condition, that after my decease, the said premises and every part and parcel thereof, shall be let, and the moneys arising therefrom, I do will and order, shall go and be applied by my executors hereinafter named, for the maintenance, support and education of my two children, Thomas and Abigail,” for limited periods. The words condition, in this clause, is of no special importance. The substance is, that although the property is given to Henry and Isaac, yet Thomas and Abigail must, for a limited period, have the rents and profits. Whether that end should be effected by letting the property to some third person, or the devisees should occupy themselves and-account for the rents and profits, was wholly unimportant. It did not, in any way affect the question, whether the devisees took a fee or not on the death of their mother. An unlimited disposition of the rents and profits, or income of an estate, will sometimes carry the estate itself (Kerry v. Derrick, Cro. Jac. 104; Phillips v. Chamberlaine, 4 Ves. 51). In Newland v. Shepperd (2 P. Wms. 194), a devise of the produce and interest of the estate to certain grand-children for a limited period, was held to pass the estate itself. But the authority of this case was denied by Lord Hardwicke in Fonereau v. Fonereau (3 Atk. 316). The rule can not apply where, as in this case, the rents and profits are only given for a limited period (Earl v. Grim, 1 Johns. Ch. 494).
The provision for the support and education of Thomas and Abigail, was a charge on the land in the hands of the devisees. It was the duty of the executors or the guardians of the children, to call on the devisees to account for the rents and profits so long as the charge continued, and to see that they *228 were applied according to the directions of the will. That tfte account could be enforced there can be no doubt.
When Henry and Isaac assented to the devise and took the estate under the will, they became liable for the payment of the shares to Thomas and Abigail, in the event on which the estate was to be valued (Doe v. [403] Holmes, 8 T. R. 1. 2 East, 87). And although this was a personal charge on the devisees, it might still be enforced as an equitable mortgage on the estate in their hands (Birdsall v. Hewlett, 1 Paige, 32).
Upon the construction which I have given to the will, the intention of the testatrix is carried into full effect. Although the instrument is very informal, no essential part of the purpose of the testatrix will fail. There is, I thisk, no other construction, consistent with the rules of law, which will accomplish so much.
It may be proper to take some further notice of the grounds on which the plaintiff’s counsel mainly relied on the argument. It was said, 1. That Henry and Isaac took nothing under the will on the death of the testatrix, and not until the land should be valued and the shares paid to Thomas and Abigail; 2. That they took only a life estate, which might be enlarged into a fee on performance of the condition, or paying over the shares; and 3. If they took a fee on the death of the testatrix, it was a conditional fee, or conditional limitation, and the defendant must show the condition performed, or the heir may enter for the forfeiture. The two first questions are involved in what has already been said. But, it may be added, that there are very great objection to the argument that the two devisees took nothing under the will on the death of their mother. The devise to Henry and Isaac is in the ordinary form of a disposition, which is to take immediate effect on the death of the testator. If they did not take the estate at that time, it is difficult to see how they could take at all. There is no provision in the will that the estate should pass on paying over the shares to Thomas and Abigail. Another objection to the construction contended for is, that it defeats a very important intention of the testatrix. It leaves the estate to descend to the heir at law, when the testatrix not only intended to exclude William from the inheritance, but to dispose of her whole interest in the land. But it is said that the estate might go to the executors until the shares were paid. The answer is, that the estate is not given to the executors, but to Henry [404] and Isaac. It is true that the rents and profits were, for a limited period, to be applied by the executors to the support and education of Thomas and Abigail. This would not give the estate to the executors by implication, especially as a different disposition of it was expressly made by the will. And besides, the object could be attained just as well by leaving the estate where the testatrix left it. The executors also had some office to perform in relation to the valuation of the estate, though the nature of that duty is not very clearly defined. The testatrix probably intended that they should watch over the interests of Thomas and Abigail, and see that the estimate was a fair one. There is a further difficulty in the way of giving the estate to the executors on the death of the testatrix. It is conceded that Henry and Isaac would be entitled to take on paying the shares to Thomas and Abigail; and yet there is no provision in the will for their taking in that event. It seems impossible to execute the intention of the testatrix in this form.
But the subsequent clause is deemed important by the counsel, in case Abigail should die under age and unmarried, “ then my said real estate to be kept and detained in the hands and possession of my said executors Until my said son Thomas Thorne shall be of his full age, and after that, the same shall be equally divided between them, share and share alike.” There is nothing in this clause which goes to prove that the testatrix did not intend that Henry and Isaac should take the estate immediately after her death. *229 The most that can be inferred from it is, that she supposed the estate could in the specified event, pass from the hands of the devisees into those of the executors until Thomas should arrive at his full age. If such washer purpose, it is sufficient to say, that the event has not happened on which the estate of the two devisees was to pass to the executors. Abigail was both married and arrived at full age. But suppose it had been otherwise, there were no words which would carry the estate to the executors; nor was there any reason why it should pass into their hands. Why should they hold it between the death of Abigail and the majority of Thomas, and who [405] would be entitled to the rents and profits in the mean time?
Then it is said, that the two devisees only took a life estate on the death of the testatrix which might be subsequently enlarged into a fee on paying the shares to Thomas and Abigail. There is nothing in the will to warrant this construction—no provision for enlarging the estate or giving any new interest to the devisees on paying over the shares. If they did not take a fee at first, I see no possible way in which they could get such an estate on paying the money.
The argument principally urged was, that the defendants took a conditional fee, and not having shown that the shares were paid to Thomas and Abigail, the condition is broken, and the heir may enter for the forfeiture. If this were in truth an estate on condition, I should be strongly inclined to the opinion that the plaintiff must at least give presumptive evidence of the non-performance of the condition before he could recover. Abigail was married and the shares were payable in 1802. The property has been held under the will ever since; and now, after the lapse of more than thirty years, after the devisees are both dead, and the property has passed through the hands of several purchasers, the plaintiff says that his ancestor had a right of entry for condition broken. Although the payment of the money was an affirmative fact, which should in general be shown by the party alleging it, I should have great difficulty in saying that the onus of proving payment rested on the de-= feudant. If it be a presumption of law that the condition was performed, the burden of proving a breach would then be thrown on the plaintiff. But it is unnecessary to pass upon this question.
This was not an estate upon condition. It was an absolute estate, with nothing more than a personal charge on the devisees. In equity, this charge would be regarded as a lien on the lands in the hands of the devisees; but it could not effect the legal title. There are no words in the will which can possibly be construed into a condition. The property is devised by the third clause without any qualification. Afterwards in the sixth clause, the testatrix directs that the property shall, in a certain event, be [406] valued, and the devisees “ shall and they "are respectively required to pay an equal part ” to Thomas and Abigail. It is admitted that there are many words which in a will make a condition, if it appear that the testator intended they should be so construed. But here we have nothing’ but an injunction to pay a sum of money, without any thing to show that a condition was intended. It is said that the words to pay, will make a condition, and that may be granted, but it must depend on the manner or connexion in which they are used. A mere direction to pay a sum of money has never been held to make a condition. In Wellock v. Hammond (Cro. Eliz. 204), the testator devised a remainder to his oldest son, paying 40s. to each of his brothers, and this was construed a limitation of the estate. The same thing was said by the second resolution in Boraston's case (3 Coke, 21). The reason is given in Mary Portington's case (10 Coke. 41), “ this word (paying) shall amount to a limitation in a will by construction, because in law it is not any word either of condition or limitation, and therefore in a will it shall serve as well for the one as for the other, to supply the intent of the *230 devisor.” See also Crikmere v. Patterson (Cro. Eliz. 146), more fully stated under the name of Crickmer’s case (Co. Lit. 236, b.; Tunstall v. Bracken, Amb. 167). In Wheeler v. Walker (2 Conn. R. 196), the testator devised the land to his two sons, they paying to bis two daughters $300 each, and this was held to make a condition. In all of these cases the words paying or to pay, were used in such a manner as fairly to import a condition without doing any violence to the language of the will; and although they-would not be appropriate words in a deed, yet for the purpose of carrying into effeót the plain intent of the testator, they were held to make either a condition or a limitation, as would best answer that end. I have met with no case where a mere injunction upon the devisee to pay a sum of money has been construed into a condition.
It is worthy of remark, in reference to a question which has been mentioned, but. which it is not intended to decide in this case, that in Wellock v. Hammond, Crickmer’s case, as given by Coke, and in Wheeler v. Walker, it was stated affirmatively that the money was not paid.
Judgment affirmed.