## PEPPARD *v.* DEAL.

Devise—as to all my worldly estate, &c., a house to A., and the remainder of my estate real and personal to my children, passed a fee prior to the act of 1833.

Tenant in fee, by devise from her father, and by descent from her brother and sister, devisees of her father, devised "my part coming from the estate of my father"—a fee passes in all the property which she acquired mediately or immediately from her father.

Tenant for life in part, and in fee, as to the residue, made an amicable partition by agreement with her co-tenants, by which a lot and a sum of money for owelty were awarded to her, and the other lots to her co-tenants. She entered and devised the land. The statute of limitations began to run from her entry.

In error from the District Court of Allegheny.

The plaintiff in this ejectment was one of three heirs of William Deal, the elder. By his will, proved in 1800, he devised:—"As to my worldly estate, I devise the house in which I now live to my son Samuel, and *the remainder* of my estate, real and personal, among my children, including Samuel," reserving a life-estate in one-third to his widow. The testator left six children. Two of them died intestate and without issue, in 1809 and 1811; Catharine, another of his children, died without issue, in 1814, having devised to her mother, Mary Deal, "my part coming from the estate of my father."

In 1820, Mary Deal and the three children of William Deal entered into an amicable partition by arbitration of the estate of William Deal and his three deceased children. The lot in question was awarded to Mary Deal, together with a sum of money as owelty, to be paid by one of the parties, who was also to pay owelty to the plaintiff's ancestor.

In 1829, Mary Deal devised the lot in question to William Deal, under whom the defendant claimed. She had occupied the pre-

mises since the partition, and her devisee had made valuable improvements.

The action was brought in 1846, and the plaintiff claimed one-third of the property, on the ground that Catharine took but a life-estate under her father's will, and that she devised but a life-estate.

The court gave judgment for defendant.

*Selden,* for plaintiff in error.

*Sawyer* and *Auston,* contrà.

*Sept.* 20. COULTER, J.—At the time Catharine Deal made her last will, her brother Samuel was dead, intestate and without issue, and also her sister Betsy was dead, under like circumstances; if, therefore, the children of William Deal the elder took an estate in fee under his will, the parts or shares of these two descended to their surviving brothers and sisters, each of the brothers and sisters having their parts severally increased by their part of the shares of each intestate which fell into their own portion or share. In case of partition there would be no division into the original number of shares, and then a separate partition of the share allotted to the dead brother and sister, but as every one of the survivors held as tenants in common in equal parts, the whole estate subject to the life-estate in the mother, both as to Samuel and Betsy's interest, and the one-third of the profits of the whole bequeathed to her during life by her husband, they would of course take by partition equal parts; and this sufficiently explains the phraseology used by Catharine Deal, who died after Samuel and Betsy, and before partition. In her last will she devises to her mother "her part coming to her from her father's estate." And this language gives occasion to the assignment of two of the errors: first, that the court erred in instructing the jury that the devise by Catharine included that part which she inherited from her brother and sister; and second, that the mother took an estate in fee simple under Catharine's will. The last error assigned is that Catharine did not take in fee simple under the will of her father, and it will be most convenient to answer this first. [His honour here stated the will of William Deal.] It is clear that the testator had in his mind the distinction between an estate for life and an estate in fee, because he limits the interest of his wife in the profits to the duration of her life. But it is clear that the words in the will passed an estate in fee to the surviving children of the testator. The language in

the introduction is carried down to the devising clause to explain its intent, if indeed it needed any explanation, for by its very words a clear intent to pass the whole interest of the testator is manifest; and that was all that was necessary in this state at any time, and there is no decision in favour of the heir going beyond that. By our statute on the subject, the reasonable rule is prescribed, to wit: "that all devises of real estate shall pass the whole of the estate of the testator, although there be no words of inheritance and perpetuity, unless by a devise over or words of limitation it appears that the testator intended to give a less estate." But these wills were made before the passage of the act, and before the ancient dialectics of the gown and the wig had entirely yielded to the dominion of common sense, and they must be interpreted according to the then existing law.

The cases of Morrison v. Semple, 6 Binn. 97, in which a devise of all a man's property was held to pass a fee, on the ground that they manifested an intention to devise the whole of the testator's interest, and Busby v. Busby, 1 Dall. 226, in which the court carried down the introductory words to explain a devise and show the intent of the testator, fully show that when the intent of the testator was apparent, it was sufficient to pass a fee. In Cassel v. Cooke, 8 S. & R. 289, it is, if not actually ruled, most strongly asserted by Justice Duncan, that "worldly estate in the beginning of a will, though not of themselves sufficient to pass a fee, are always carried down to the devising clause to show the intention." To the same point I refer to 5 Metc. 134, 18 Pick. 537, and 17 Wend. 393. Catharine therefore took a fee by the will of her father. And we are of opinion with the court below, that she passed a fee to her mother by her will, because she gives all her interest in the estate of her father. She gives a small pecuniary legacy to each of her brothers and sisters, and thereby shows that she had in her mind's eye all those who were likely to be participants of her bounty, and devises to her mother all the part coming to her from the estate of her father. Now what part was coming to her from the estate of which her father died seised? certainly not only that specifically devised to her, but also that by which it had been increased, owing to the falling in of her share of her brother's and sister's part. Her portion of the part devised to Betsy and Samuel, was as much and as truly coming to her out of her father's estate, as that specifically devised to her. But it is clear that Catharine intended to dispose of her whole estate, and that after the small legacies given to her brothers and sisters, all

the rest of her worldly interest should go to, and be enjoyed by her beloved mother, as she denominates her; and that this embraced as well the quantum of land, embracing all that she was entitled to out of the estate of which her father died seised, as the quantum of interest or estate, and that was a fee. All the severity of the English lawyers with regard to devises, and their devotion to names, words, and classifications, in order to preserve the estate of the heir, would seem to be out of place in this country; where the will of the testator, no matter to whom it conveys the estate, when it can be collected from the instrument, is the pole-star of decision.

There was, however, a portion of the estate in which the mother was only entitled to a life-estate, to wit: that which fell to her by the death of Samuel and Betsy, intestate. But for some reason the mother and surviving brothers and sisters were under the impression that each was entitled to an equal share of the whole estate, and they agreed to make amicable partition, and referred the matter to three arbitrators, with ample powers to do justice between them. To this agreement the ancestor of the plaintiff, as well as the widow, under whom defendant claims, were parties. The partition was made, and parts assigned to each, and owelty of partition amounting to $411 was to be paid to John, the ancestor of the plaintiffs, and also the same amount awarded to the widow of William and devisee of Catharine. They severally entered into possession of their respective parts, each claiming in severalty and absolutely in their own right. It is true that the mere act of partition could not enlarge the estate of any one, as we have recently held in two cases. But here was a new element, the payment of owelty, which might enlarge the estate according to circumstances, by constituting a new contract and new and valuable consideration. But this part of the case is ruled on another ground. The mother of Catharine entered into possession, claiming as her own, in 1822. In 1830, she devised the premises to the defendant, or those under whom he claims, and valuable improvements have been made; the statute of limitations began to run during the life of John, the ancestor of plaintiffs, and suit was not brought until 1846. The statute is a bar to the plaintiffs. It commenced running while John was in full life without disability, and it continued to run.

The defendant, and those under whom he claims, have been in adverse, uninterrupted possession for more than twenty-one years.

Judgment affirmed.